IN RE INTEREST OF GOODON.
STATE OF NEBRASKA, APPELLANT, V.
BEN GOODON ET AL., APPELLEES.

303 N.W.2d 278

Filed March 13, 1981.   No. 43048.

Thomas P. McNally for appellant.

Stephen A. Scherr for appellee Doris Goodon.

Lloyd W. Kelly of Kelly, Kelly & Kelly for appellee Ben Goodon.

Heard before KRIVOSHA, C.J., McCOWN, and HASTINGS, JJ., and COLWELL and CANIGLIA, District Judges.

McCOWN, J.

This is a proceeding to terminate parental rights. The county court of Harlan County, Nebraska, terminated the parental rights of Ben Goodon and Doris Goodon with respect to their five children. On appeal, the District Court vacated the order of the county court terminating parental rights. The State has appealed.

In December 1977 and January 1978 the county

attorney of Harlan County filed petitions alleging that Brenda Goodon, age 14, Colleen Goodon, age 8, Janice Goodon, age 7, Rickie Goodon, age 11, and David Goodon, age 12, children of Ben and Doris Goodon, were neglected or abandoned children within the meaning of Neb. Rev. Stat. § 43-202(2)(a), (b), and (c) (Reissue 1978). The evidence at the adjudicatory hearing established that the parents had substantially and repeatedly neglected the children and failed to provide proper care necessary for the health, morals, and well-being of the children. The evidence also established that Ben Goodon was an alcoholic, had engaged in sexual activities with his daughters, and had physically abused the children. Doris Goodon, who was represented by counsel, stipulated and agreed that the children were abandoned or neglected children under § 43-202(2)(a), (b), and (c). Although Ben Goodon had actual notice of the hearing, he did not appear.

On March 2, 1978, the county court found the children to be children designated under § 43-202(2)(a), (b), and (c) and placed legal custody of the children in the court and granted physical custody to Doris Goodon pursuant to her stipulation and agreement that she would immediately proceed to seek a divorce from Ben Goodon. The court ordered Ben Goodon not to come upon the premises upon which the children were residing at any time and ordered Doris Goodon to notify law enforcement authorities at once if he came upon the premises or attempted to do so.

On May 8, 1978, Ben Goodon was found on the premises where the children were living with Doris Goodon. The children were removed from the home and placed in temporary custody of the welfare department. On May 18, 1978, following a hearing, the court found that the order of March 2, 1978, had been violated in that Ben Goodon was residing with the children and that the violation presented sufficient potential harm to the children to justify taking temporary physical custody of the children pending a final

hearing, and that the best interests of the children would be served by retaining them in the custody of the State. Legal and physical custody of the children has remained with the State since that date.

On July 19, 1978, the county attorney filed a motion to terminate the parental rights of Ben Goodon and Doris Goodon. Hearing was held on the motion to terminate parental rights on October 26 and 27, 1978, at which all parties were represented by counsel.

On February 20, 1979, the county court entered its order and decree specifically finding that Ben Goodon had sexually molested certain of his female children; that he suffers from a severe alcohol addiction; that Doris Goodon had shown an inability to protect her children from Ben Goodon's drinking habits and physical abuse of the children; and that her failure to protect her children from him has irreparably affected the children's health, morals, and well-being. The court also found that there was a history of abuse of the children and an unwillingness to recognize or discharge parental responsibilities for any substantial period of time and that juvenile proceedings involving neglect of children had been filed previously in three other states. The court also found that in various degrees the children are suffering from emotional and psychological illnesses as the result of Ben Goodon's behavior toward them and the home environment in which they have been living. The county court therefore terminated the parental rights of Ben Goodon as to all five children and terminated the parental rights of Doris Goodon as to all the children except Brenda. Custody of the four younger children was placed in the Department of Public Welfare of the State of Nebraska for placement in approved family homes or for adoption. Custody of Brenda was placed in the Department of Public Welfare for placement in an approved family home and Doris Goodon was granted reasonable rights of visitation as to Brenda. It was specifically ordered that Ben Goodon was to

have no visitation rights. Ben and Doris Goodon appealed to the District Court.

The District Court stayed the order of the county court authorizing adoption and granted the parents limited visitation rights pending the appeal.

On July 9, 1979, following the reception into evidence of the record from the county court and arguments of counsel, the District Court took the matter under advisement. On July 24, 1979, the District Court entered its order vacating the ruling of the county court terminating parental rights. The State has appealed.

The juvenile court in each county may terminate parental rights between the parents of a child and such child when the court finds such action to be in the best interests of the child and it appears by the evidence that one or more of the following conditions exist: "(2) The parents have substantially and continuously or repeatedly neglected the child and refused to give the child necessary parental care and protection;

. . . .

"(4) The parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the child . . . ." See Neb. Rev. Stat. § 43-209 (Reissue 1978).

An order of the juvenile court terminating parental rights under § 43-209 must be supported by clear and convincing evidence. *State v. Wedige,* 205 Neb. 687, 289 N.W.2d 538 (1980); *In re Interest of Morford,* 207 Neb. 627, 300 N.W.2d 795 (1980).

In the present case, the parents contend that the evidence of parental misconduct, particularly sexual misconduct on the part of Ben Goodon, was not clear and convincing. The argument is that the testimony of several State's witnesses as to sexual miscon-

duct was based merely on statements of the children or of the mother made to the witnesses on various occasions, while the children who testified on the witness stand, in the presence of their parents, denied any sexual misconduct. It should be noted that the juvenile judge at the hearing on termination of parental rights had previously conducted the adjudicatory hearing under § 43-202, and specifically took judicial notice of that evidence in this termination proceeding.

An appeal of a juvenile case is heard by trial de novo upon the record. The findings of fact by the trial court will be accorded great weight because the trial court heard and observed the parties and witnesses, and those findings will not be set aside on appeal unless they are against the weight of the evidence or there is a clear abuse of discretion. *State v. Jenkins*, 198 Neb. 311, 252 N.W.2d 280 (1977); *In re Interest of Morford, supra.*

In the case now before us, the District Court made no findings of fact, and the findings of fact of the juvenile court at trial with respect to Ben Goodon are clear and convincingly supported by the evidence. The findings of fact with respect to Doris Goodon are related to her inability to protect her children from her husband and the conclusion that her lack of resolve, courage, or ability to protect her children also irreparably affected the children's health, morals, and well-being. The evidence in this case sustains the action of the juvenile court in terminating parental rights. The decree of the county court was correct and should have been affirmed.

The order of the District Court vacating the decree of the county court is reversed and the decree of the county court of February 20, 1979, is reinstated and affirmed.

REVERSED AND REMANDED.

KRIVOSHA, C.J., dissenting.

I find that I must regrettably dissent from the

majority in this case. I have no quarrel with the majority's view that the best interests of the children demand that their legal and physical custody be placed with the State and not with their parents. My quarrel with the majority is in its affirming the county court in terminating the parental rights of the mother in this case. We are not here dealing with children of tender years but, rather, children today who range in age from 10 to 15. Though their needs are no less than children of tender age, experience has taught us that the likelihood of their being adopted either together as a family or individually at this age is virtually impossible. In effect, then, we are not only terminating the relationship between the parents and their children, but may likewise be terminating the relationship of brother and sister as between each child.

I believe the reality of the matter, as was apparently concluded by the District Court, is that these children are unadoptable. And so we have, by our action herein, made these youngsters "children without parents." I know of no court order which will cause a 15-year-old child to forget his biological parents, nor to forget brothers and sisters of near equal age. It was apparently for that reason that even the county court concluded that the parental rights of the oldest child, Brenda, should not be terminated and, instead, she simply be placed in the custody of the State.

Neb. Rev. Stat. § 43-209 (Reissue 1978) specifically provides, in part, as follows: "The court may terminate all parental rights between the parents . . . when the court finds such action to be in the best interests of the child . . . ." I have difficulty concluding how terminating the parental rights and leaving these children without any parent, or the real prospect of any parent, can be in their own best interests. Courts must address these matters realistically. It is one thing to remove the physical custody of an abused child and place it with the State; it is another thing to attempt to terminate parental rights of children who have reached the

ages of the children involved in this case, particularly where there is no evidence of any interest by anyone to adopt them. The jurisdiction of the juvenile court is a continuing jurisdiction once a child has been adjudged to be neglected. See *State v. Miller*, 189 Neb. 383, 203 N.W.2d 97 (1972). The options available to the juvenile court, short of terminating parental rights for the best interests of the child, are many. See Neb. Rev. Stat. § 43-210 (Reissue 1978). I believe that the action of the District Court was the more appropriate one in this case, in that we would then be granted the option of attempting to find a home or homes for these children before we publicly declared they are without parents. I believe we have, in effect, burned the children's bridges behind them without knowing that there is any road to the future. I would have affirmed the judgment of the District Court.

CANIGLIA, District Judge, joins in this dissent.