IN RE INTEREST OF COOK, A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. YVONNE COOK, APPELLANT.

304 N.W.2d 390

Filed April 10, 1981. No. 43388.

Steven Lefler for appellant.

Donald L. Knowles, Douglas County Attorney, and W. Mark Ashford for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

Yvonne Cook appeals from an order of the separate juvenile court of Douglas County, Nebraska, terminating her parental rights over her child.

Yvonne Cook and Joseph Cook are the natural parents of a child who was born February 20, 1973. A petition was filed in the juvenile court on August 24, 1979, which, as amended, alleged that the child was lacking proper parental care because of sexual molestation and manipulation by her father. The petition set out specific incidents which had occurred on March 22, 1977, and August 8, 1979, and alleged that numerous incidents had occurred between those dates and that Yvonne had failed to remove the child from the environment created by the father. At the adjudication hearing on November 27, 1979, Yvonne admitted these allegations were true.

The child was placed in foster care by the juvenile court on the date the petition was filed. After an evidentiary hearing on September 10, 1979, the detention was continued over the opposition of both Yvonne and Joseph. An adjudication hearing was held on November 27, 1979, and the parental rights of Yvonne and Joseph were terminated on January 29, 1980. Yvonne and Joseph appeared in person at the hearings and were represented by separate counsel. The child was represented by a guardian ad litem. Only Yvonne appeals from the order of January 29, 1980, terminating parental rights.

Parental rights may be terminated when the parents have substantially and continuously or repeatedly neglected the child; have refused to give the child necessary parental care and protection; and such action is in the best interests of the child. Neb. Rev. Stat. § 43-209 (Reissue 1978).

There is little or no dispute concerning the facts in this case. The evidence shows that the sexual molestation or abuse of the child by her father commenced at about the time she began to walk, at approxi-

mately 18 months of age, and continued until the time that she was placed in foster care. The molestation included fondling, kissing, oral sex, attempted intercourse, and masturbating in the presence of the child.

When Yvonne complained to Child Protective Services on August 9, 1979, she knew that the molestation had been going on for more than 2 years. She testified that the child complained to her in March 1977. Yvonne testified concerning a third incident which had occurred in January 1979 and admitted that the child had complained to her before March 1977. After the complaint by the child in March 1977 Yvonne confronted Joseph and contacted Child Protective Services, which suggested counseling. Approximately 1 month later Joseph admitted that he had been molesting the child since she was 18 or 19 months old and sought counseling. The counseling, however, consisted of only one or two conferences. Joseph did not again seek counseling until after the incident in January 1979. It is apparent that counseling was ineffective to stop the molestation and abuse.

After the August 8, 1979, incident Yvonne refused to cooperate with the police officers who contacted her and refused permission for the officers to speak with the child or for the child to be examined by a physician. The child at that time was complaining of irritation and discomfort while urinating. Yvonne suggested the condition was due to insufficient bathing and soiled underwear.

The record shows that Yvonne was more interested in preserving her relationship with Joseph than in protecting the child. The fact that Yvonne claimed ignorance of but a few of the incidents that had occurred demonstrated her inability to deal with the realities of the situation. She was unwilling to do anything to remedy the situation other than urge Joseph to seek counseling and attempt to be more "watchful" of the child. Although Yvonne and the

other children moved to her mother's home after the August 1979 incident, she has not told her mother the reason why the child was placed in foster care.

The evidence shows that the child has progressed very well in foster care. Although the nightmares which she suffered while living at home continued for a while, she now appears to have made a satisfactory adjustment.

There is some indication in the record that Yvonne and Joseph separated in September 1979. At the hearing on the motion for new trial on March 19, 1980, counsel stated that Yvonne had commenced a dissolution proceeding. Without regard to what may have happened or may happen in that proceeding, there is no assurance that Joseph will not return to the home at some future time. The other children in the family were not affected by this proceeding. The record indicates Yvonne would hope to reunite the family.

As we view the record, it was in the best interests of the child that the parental rights of both parents be terminated. The judgment is therefore affirmed.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I regret that I must once again dissent with the majority of the court in this case concerning the matter of terminating parental rights. While I do not for a moment minimize the seriousness of the matter, either generally or in this case, I believe that the court has resorted to means more drastic than are necessary under the facts in this case.

Before an order of the juvenile court terminating parental rights under Neb. Rev. Stat. § 43-209 (Reissue 1978) may be upheld by this court, the action taken by the lower court must be supported by clear and convincing evidence. See, *State v. Wedige*, 205 Neb. 687, 289 N.W.2d 538 (1980); *In re Interest of Morford*, 207 Neb. 627, 300 N.W.2d 795 (1981). I do not believe

that the record in this case will establish by clear and convincing evidence that the parental rights of the mother should be terminated.

No one who testified in this case suggested such action should be taken. As a matter of fact, all of the evidence offered in the case indicates that the visitation rights of the mother should be continued.

A report dated January 16, 1980, signed by Ann Campion, service officer; John Tiedeman, guardian ad litem; and Gladys Haines, Child Protective Services worker, and offered into evidence, recommended that, while the minor child be placed in the custody of the State Department of Public Welfare for continued foster care placement, the mother, nevertheless, continue to have regular visitation with the child. A report filed by the Douglas County Welfare Administration dated January 23, 1980, and offered into evidence, likewise recommended that the mother continue to have rights of visitation with the child. Neither report recommended that her parental rights be terminated.

A report dated January 21, 1980, prepared by Dr. K. J. Kenney, center director for Immanuel Community Mental Health Center, and offered into evidence at the hearing held on January 29, 1980, indicated that the father and mother have been obtaining outpatient counseling since September 1979 and "they have made excellent progress." The report goes on further to provide: "Both Mr. and Mrs. Cook have made great strides in resolving the problem. They each recognize, at the present time, that the reason for Mr. Cook's deviant behavior was his anger towards his wife Yvonne. This anger has been worked through satisfactorily and the two of them are, at the present time, getting along very well." Dr. Kenney's report concludes as follows: "Therefore, my recommendation would be the resumption of their living as a married couple, in their own house, with their daughter, and a continued family therapy program

established either with Dr. Dahlke, or with us here at Immanuel Community Mental Health Center, for at least six months. If this program should be carried out here, we would be happy then to supply you with further information as to the progress the family has made."

The guardian ad litem likewise urged the court not to terminate the rights of the mother.

The majority relies, to some extent, on the fact that the mother, though aware of what was taking place, did not remove herself and the child from the home immediately.

While we might have hoped that such action would have occurred, we must not, nevertheless, fail to recognize the realities of life. A moderately educated woman with small children, no means of support, and no place to go does not quickly remove herself from the family home for whatever reason.

Moreover, the evidence discloses that, when the episode apparently first occurred, the mother contacted Child Protective Services and advised them of what was taking place. At that point Child Protective Services did not recommend that she remove herself or the child from the home, but, rather, suggested that the entire family seek counseling. If the failure to remove the child was so negligent as to justify our terminating her parental rights, why did not Child Protective Services see the problem and suggest to the woman she take such action, rather than apparently assure her that she could remain in the family home if she sought counseling?

We must not lose sight of the fact that this entire matter came to light because the mother did, in fact, remove the child from the home. While it is true she should have done it sooner, we should not overlook the fact that she did, in fact, take such action and report the matter to the police. We now reward her for having finally acquired the necessary strength to act by terminating her parental rights.

I do not believe that the evidence in this case is clear and convincing that the mother has acted in such a manner that she has, indeed, lost her parental rights or that the best interests of the child, under the facts, demand that she be separated from her mother and two brothers. As I noted in my dissent in *In re Interest of Goodon, ante* p. 256, 262, 303 N.W.2d 278, 281 (1981): "The options available to the juvenile court, short of terminating parental rights for the best interests of the child, are many. See Neb. Rev. Stat. § 43-210 (Reissue 1978)." Where, as here, the evidence indicates that the mother has sought and obtained counseling and is making progress, and the child has had counseling and is making progress, I would have been inclined to follow the recommendations of the professionals and the urging of the guardian ad litem and delayed terminating the parental rights of the mother in this case for at least an additional 6 months to see whether the mother and her child could not have been successfully reunited.