IN RE INTEREST OF MICHAEL TIMOTHY WOOD,
RON FITZGERALD LINDEN, AND JAMES EUGENE LINDEN,
MINOR CHILDREN UNDER THE AGE OF 18 YEARS.
STATE OF NEBRASKA, APPELLEE, V.
NORMA ELEANOR LINDEN, APPELLANT.

306 N.W.2d 151

Filed May 22, 1981. No. 43406.

Richard G. Kopf of Cook & Kopf, P.C., for appellant.

Byron W. Fallesen, Deputy Dawson County Attorney, and Glenn A. Clark for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

Appellant appeals from an order of the District Court for Dawson County, Nebraska, affirming an order of the Dawson County Court terminating appellant's parental rights in three of her sons, Michael Timothy Wood, Ron Fitzgerald Linden, and James Eugene Linden. A fourth son, Joey Adam Donner, was born subsequent to the termination order of the county court, and appellant's parental rights as to Joey Adam Donner are not at issue here. Summonses were served on the putative fathers (apparently as

identified by appellant) of Ron and James Eugene (called Gene), but neither appeared in the proceedings by counsel or otherwise. Service was attempted on the putative father of Michael Timothy (called Tim), but he could not be located by the sheriff. We therefore consider here only the rights of the biological mother, without prejudice to any rights of the putative father. See, *In re Interest of Witherspoon,* 208 Neb. 755, 305 N.W.2d 644 (1981); *Cox v. Hendricks,* 208 Neb. 23, 302 N.W.2d 35 (1981).

The petition in this case, filed in September 1977, alleged that Tim and Ron were children within the meaning of Neb. Rev. Stat. § 43-202(2) (Reissue 1978), in that they "lack proper parental care by reason of the faults or habits of their parent, and that they are in a situation dangerous to life or limb." The evidence reflects that for several months prior to the filing of the petition, Tim and Ron were attending the Child Development Center in Cozad, a day school for developmentally disabled children. On several occasions, both boys came to school with bruises and scratches which aroused the suspicion of center staff members. The boys were examined by a doctor with reference to the injuries. On at least one occasion, Tim reported that "dad" had hit him with a stick, "dad" apparently being James Donner with whom appellant was living. Tim reported that "Mom did it," with reference to Ron's bruises on another occasion. Development center personnel contacted police and also the Multi-County Social Service Unit in Lexington. Appellant was a client of the unit and Lois Hayes of that agency discussed the boys' bruises with appellant and Donner. While Hayes did not accuse either appellant or Donner of inflicting the bruises on the boys, she did tell them that the bruises must stop and explained the possibility of appellant losing custody should the bruises be found to be the result of child abuse. Shortly thereafter, appellant came to Hayes' office and angrily terminated her

relationship with the unit, stating to Hayes that she did not "have any witnesses."

The petition was filed on September 26, 1977, in Dawson County Court. A hearing was held on September 26, 1977, and following that hearing the children were ordered left in appellant's custody until further hearing. On October 19, 1977, the county attorney of Dawson County filed an affidavit stating that Ron had appeared at the South Central Child Developmental Day-Care Center with "numerous bruises and scratches," and asking that both boys be taken into immediate custody. This request was granted by the court on the same day.

On October 24, 1977, an adjudication hearing was held, at which evidence was presented on the issue of the boys' status as children within the meaning of § 43-202(2). At that hearing, a neighbor, Mrs. Beulah Helberg, testified that on two occasions she had seen appellant strike both Ron and Tim repeatedly with a hard object of some kind while the boys were lying on the ground. Reports of the doctor and the development center staff were also admitted into evidence at this hearing, including the above-mentioned statements of Ron and Tim as to how they got the bruises. Nevertheless, the court ordered the children returned to appellant "as soon as reasonably possible" upon several conditions. One of the conditions was that Donner "refrain from residing in the home . . . until such time as he is able to demonstrate to the Court that he has consulted with a mental health professional regarding the imposition of appropriate discipline upon minor children." For reasons that do not appear in the record, the boys were returned to the custody of appellant while Donner was residing with her, and the record does not reflect that the required showing was made before their return.

On March 13, 1978, the county attorney filed another affidavit, this one showing that on February 27, 1978, and March 8, 1978, Ron again came to the

development center with injuries, which included a burn as well as bruises, and asking that a guardian ad litem be appointed for Tim and Ron. On March 17, 1978, a guardian ad litem was appointed and authorized to have the children examined by an independent physician, but again the boys were left in appellant's custody. On April 7, 1978, the guardian ad litem filed his report with the court, concluding that Tim and Ron had "indeed suffered injuries inconsistent with normal discipline" and recommending that they be removed from appellant's custody and placed in foster care for a minimum of 6 months. He also recommended that appellant be ordered to attend parenting classes and individual mental health therapy, and that Donner "have absolutely no contact with the . . . children . . . until he has demonstrated to this court that he has consulted with a mental health professional and that the results of such examinations have been presented to this court."

No action was taken on the guardian ad litem's recommendations until after the filing of yet another affidavit by the county attorney on April 24, 1978. The incident which prompted the filing of this affidavit is reflected in the evidence adduced at a hearing on this affidavit on April 24. The evidence showed that on the night of April 20, 1978, Lexington police were notified that the children were left alone in the trailer. Police investigated and found that the three boys, including Gene, were indeed alone in the trailer; that Gene was having trouble breathing due to a respiratory ailment, that he had a diaper rash so severe that scabs were forming on his legs, and that he was in his crib without covers; that Tim was asleep on a bed in the trailer without covers; that Ron was asleep on the floor next to the bed, wrapped in a blanket; and that the trailer was filthy. The officers removed the children from the trailer and they were placed in emergency foster care.

The affidavit filed after this incident for the first

time requested that appellant's parental rights be terminated. The court, after this hearing, ordered that the boys be placed in foster homes subject to reasonable rights of visitation by appellant.

On May 23, 1978, a hearing was held on the request to terminate appellant's parental rights. The previous adjudication of Tim and Ron as children within § 43-202(2) was allowed to stand, and Gene was also adjudicated such a child. The court then found that termination of parental rights was unwarranted at that time, but left the boys in foster homes subject to reasonable rights of visitation in appellant, excluding overnight visits. He ordered appellant into psychiatric counseling for 6 months and set a further hearing date of November 28, 1978.

At the second dispositional hearing in November, the report of appellant's counselor, Anthony Phillips, discussed the counseling he had done with appellant and concluded that there had been no significant change in appellant's parenting ability; that her therapy progress had been minimal; and recommended that Donner attend both group and individual counseling since "the children might legally be placed back with Mrs. Linden, but they will realistically live with both [her] and Mr. Donner." The court again refused to terminate appellant's parental rights. Its order, after this hearing, "encourage[d] specific attempts by the parties to implement regularly scheduled meaningful visitations," ordered another 6 months of counseling, and set a further dispositional hearing for May 31, 1979. This hearing was finally held on July 24, 1979.

At the July hearing, reports of both Phillips and Dr. Reba White, who took over as appellant's counselor after Phillips resigned, demonstrated that appellant had made very little progress in working through her emotional problems and tended to blame others for her lot in life rather than accepting responsibility for her own actions. Visitation, including overnights, had

been arranged, but the evidence showed that on at least one occasion Gene was returned to his foster home with a black eye after visiting with appellant and Donner. He also suffered from diarrhea upon his return from visits with them. The evidence also showed that appellant intended to continue to live with Donner; that Donner had gone to only three counseling sessions with Phillips and absolutely refused to attend sessions with Dr. White after Phillips' resignation. In sum, the evidence fully supported the finding of the court that "[t]his action has been pending since September 26, 1977, and little or no progress or prospects for progress has been shown by the Parents to provide the Children with parental care and protection . . . ." The court then ordered termination of appellant's parental rights in all three boys, which was affirmed on appeal by the District Court. We emphatically affirm.

It would seem that the above narrative would dispose of appellant's contention on appeal that she was not given a reasonable opportunity to rehabilitate herself. However, even if it does not, it is not the law in this state, as appellant would have us decide, that "parental rights may not be terminated unless the parent is given a reasonable opportunity to rehabilitate himself." Neb. Rev. Stat. § 43-209 (Reissue 1978) sets out six independent conditions, any one of which existing alone will justify termination of parental rights. Subsection (6), upon which appellant relies, sets out one of these conditions: "Following upon a determination that the child is one as described in subdivision (1) or (2) of section 43-202, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination." This does not mean that the parent must be given an opportunity to rehabilitate himself or herself even though one of the other five conditions set out in § 43-209 exists. It simply means that if the court has, in its discretion, ordered the parent to make reasonable efforts to

rehabilitate, failure of those efforts is another independent reason justifying termination of parental rights. This is what is meant by the case of *State v. Chant*, 202 Neb. 750, 277 N.W.2d 97 (1979), which appellant erroneously cites as authority for her claim that she is entitled to a reasonable opportunity to rehabilitate herself. That she is not so entitled is clearly expressed in *In re Interest of Carlson*, 207 Neb. 540, 543, 299 N.W.2d 760, 762 (1980), where this court held that: "There is no requirement that the court must implement a rehabilitation plan for the parent of a child found to be dependent and neglected . . . ."

Furthermore, it is abundantly clear from the record in this case that no opportunity to rehabilitate will ever be reasonable if the opportunities given appellant here were not. She was allowed to maintain custody of her children in the face of convincing evidence that she and Donner abused them. When the children were finally placed in foster care, appellant was still given more than a year thereafter to rehabilitate herself; and the record shows that every effort was made by appellant's counselors, the guardian ad litem, and even one of the foster mothers to assist appellant in overcoming her emotional problems and learning appropriate parenting techniques. Yet, the record also shows that the one who participated most reluctantly in these rehabilitation efforts was appellant herself, even though it was she who bore the responsibility to rehabilitate herself. *State v. Chant, supra.*

We cannot emphasize enough in cases such as these that "[t]he right of a parent to custody and control of his [or her] child is a natural, but not an inalienable, right. The public has a paramount interest in the protection of children from abuse and neglect." *In re Interest of Carlson, supra* at 543, 299 N.W.2d at 762. This public interest stems from the child's "right to grow up in a healthy and wholesome environment." *Id.* The larger issue in any case involving termina-

tion of parental rights is that right of the child identified in *Carlson*, and our duty to decide custody cases based on the best interests of the child requires that parental rights be subject to the rights of the child which make up its best interests. As we noted in *Meysenburg v. Meysenburg*, 208 Neb. 456, 458, 303 N.W.2d 783, 785 (1981): "It may very well be that the best interests of [the mother] would support a claim that the child be placed with her. . . . [H]owever, our principal concern is not the best interests of the mother but with the best interests of the child."

The three little boys involved here suffered physical, mental, and emotional abuse at the hands of appellant and Donner. The record demonstrates clearly that the developmental disabilities which prompted their placement in the Child Development Center have shown marked improvement since they were removed from appellant's custody. Although it was not required to do so, the court gave appellant more than reasonable opportunity to rehabilitate herself to the point where she could give her children proper parental care and supervision. After 2 years, she failed to do so, and the county court carried out its duty to the best interests of the children by terminating appellant's parental rights.

We note as well that the trial court found that termination of parental rights was justified under subsection (2) of § 43-209, finding specifically that "the Parents have substantially and continuously neglected the Children, and have refused to give the Children necessary parental care and protection." The evidence fully supports this finding, and the finding represents an independent justification for termination of appellant's parental rights in the three boys.

Appellant's final assignment of error concerns the trial court's denial of her application to have the court appoint a psychiatrist for her at the State's expense. This was a matter addressed to the sound discretion of the trial court, *State v. Suggett*, 200 Neb.

693, 264 N.W.2d 876 (1978), and will not be reversed on appeal absent abuse of discretion. The record demonstrates that, after the court's denial of her application, appellant hired a psychiatrist of her own accord but did not attempt to introduce into evidence the results of his examination either at the trial or on appeal. Further, appellant has not challenged the competence of Dr. Ernest Matuschka, the psychiatrist appointed by the court to evaluate her condition before the final dispositional hearing, nor did she present any evidence contradicting his evaluation. Thus, we find no abuse of discretion in the trial court's refusal to appoint a psychiatrist of appellant's choosing, and the assignment is without merit.

The decision of the county court terminating appellant's parental rights was correct in all respects, as was the order of the District Court affirming that decision. We therefore affirm the order of the District Court.

AFFIRMED.

KRIVOSHA, C.J., concurs in result.