IN RE INTEREST OF HIATT.
STATE OF NEBRASKA, APPELLEE, V.
CHRISTINE HIATT, APPELLANT.

307 N.W.2d 108

Filed June 19, 1981. No. 43327.

Maureen Fitzgerald Brown of Brown Law Offices for appellant.

Donald L. Knowles, Douglas County Attorney, and Francis T. Belsky for appellee State.

Donald B. Fiedler, guardian ad litem.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

This is a proceeding for termination of parental rights. The separate juvenile court of Douglas County terminated the parental rights of the mother and father of two children. The mother has appealed.

In June 1975 the appellant and John Hiatt, Jr., were married in Utah. The appellant was 14 years old and pregnant, and her husband was 15 years old.

On January 10, 1976, their first son was born and the second boy was born on April 10, 1977. Financial and other problems were present from the beginning of the marriage. The father was employed only occasionally and the mother was receiving ADC allotments. On several occasions the mother obtained food and supplies for the children from her grandmother and her father. In July 1977 the mother requested a caseworker for Child Protective Services to place the boys in temporary foster care for 2 weeks until the mother could "get things together." The boys were returned to the mother after 16 or 17 days when she requested it. The marital situation of the parents and the home life provided for the boys deteriorated from July 1977 through January 1978. The caseworker for Child Protective Services made numerous home visits and talked to the mother frequently, both in person and by telephone. During this period of time the home was described as very dirty, with unwashed dishes, diapers, and trash all around. On numerous occasions there was either no food or a grossly inadequate supply of food for the children in the home. The sole financial support for the family was the ADC check and the father took part of that for his personal use.

On January 27, 1978, the parents delivered the two boys to the caseworker and told her they could no longer care for the children. The parents had previously been advised of the consequences of delivering custody and of possible court intervention.

A detention hearing was held on February 16, 1978. By the time of the hearing the parents had apparently changed their minds and sought to regain custody of the boys. Both parents testified, however, that it would be difficult to provide for the children at that time and that it would be better for the children to remain in the custody of the State for the time being. At the close of the hearing the court ordered the children to remain in the custody of the State and continued the

case for 6 to 8 weeks.

On May 18, 1978, an adjudication hearing was held. The parents, their counsel, and the guardian ad litem for the children all appeared. The parents admitted the allegations of the petition that the two children were homeless or destitute or without proper support within the meaning of Neb. Rev. Stat. § 43-202(1) (Reissue 1978). The separate juvenile court found that the children were within the meaning of § 43-202(1) on proof beyond a reasonable doubt and ordered the custody of the children to remain with the State until further order of the court. At the time of the hearing the parents were living in South Dakota, were having marital difficulties, and the mother was pregnant again.

The mother filed a divorce petition in June 1978, but the parties were reconciled and a third child was born on October 29, 1978. A further disposition hearing was held in the present case on December 18, 1978. The court ordered the father to obtain employment and provide a stable source of income for the family, and both parents were ordered to obtain adequate housing and furniture, to cooperate with court officers and to visit the children regularly, and the children were continued in the custody of the State. The mother reactivated her divorce petition and a decree was entered on July 5, 1979. The mother was given custody of the third child and the custody of the two children under the jurisdiction of the juvenile court in this proceeding was reserved pending further order of the juvenile court.

A motion for termination of the parental rights of the mother and father was filed on August 21, 1979. Hearing was set for September 27, 1979, but stay was granted because of the active military service of the mother. She joined the U.S. Army Reserves and reported for duty at Fort Leonard Wood, Missouri, on July 6, 1979, and was thereafter assigned to Fort Jackson, South Carolina, for additional training.

She returned to Nebraska on October 9, 1979. After further continuance, a hearing was held on the motion for termination of parental rights on December 19, 1979. At the outset of the hearing the father admitted the allegations of the motion for termination of parental rights and his rights are no longer involved.

A supervisory service officer of the juvenile court who had been working with the parents since February 1978 testified that the mother's situation had not improved since 1978, and that, in her opinion, if the mother were given custody of the children she would not care for them. She testified that the mother had visited her children only twice in the previous 6 months and that when the mother left for military service she left no forwarding address and the juvenile court and Child Protective Services did not know her whereabouts. She also testified that the children had been in foster care for 2 years and that the younger boy did not even know his mother. She also testified that the mother was admitted to the Nebraska Psychiatric Institute in the spring of 1979 and, upon release, stayed at the Women's Shelter for a few days and joined the Army approximately 6 weeks later.

Caseworkers for Child Protective Services and Douglas County Social Services also testified, generally confirming the testimony of the juvenile court service officer and particularly that the mother visited with the children on only a few of the many authorized occasions and sometimes scheduled a visit and failed to appear. In the opinion of the caseworkers the best interests of the children required the termination of parental rights. The guardian ad litem for the children joined the State in requesting the termination of parental rights.

The mother testified in her own behalf and testified that she felt she could support the three children on her ADC benefits plus her Army pay and a government grant which she received while she was attending a technical college. Essentially, her testimony was

that she believed she could take care of her children, but that if her children were returned to her and things did not work out she could always relinquish her parental rights then.

At the conclusion of the hearing the separate juvenile court terminated the parental rights of the mother and the father under Neb. Rev. Stat. § 43-209(6) (Reissue 1978). The mother has appealed.

An order of the juvenile court terminating parental rights under § 43-209 must be supported by clear and convincing evidence. *In re Interest of Goodon*, 208 Neb. 256, 303 N.W.2d 278 (1981).

The juvenile court may terminate all parental rights of parents when the court finds such action to be in the best interests of the child or children and it appears by the evidence that one or more of the conditions set out in § 43-209 exist. *In re Interest of Goodon, supra.*

While there may be no direct affirmative evidence of child abuse, where there is ample evidence of neglect and a lack of proper parental care directly and adversely injurious to the health, safety, and well-being of the child, the best interests of the child become paramount. *In re Interest of Kimsey*, 208 Neb. 193, 302 N.W.2d 707 (1981).

Parental rights may be forfeited by substantial, continuous, and repeated neglect of a child and a failure to discharge the duties of parental care and protection. *In re Interest of Witherspoon*, 208 Neb. 755, 305 N.W.2d 644 (1981).

In the case at bar the evidence was clear and convincing and the trial court did not abuse its discretion in entering its order terminating parental rights.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

As I have on several previous occasions, I believe we have once again overreacted to a situation in affirming the trial court's action in terminating parental rights in this case. See, dissent of Krivosha,

C.J., *In re Interest of Cook*, 208 Neb. 549, 304 N.W.2d 390 (1981). It appears to me, in the instant case, we have once again appropriately declared that an order of the juvenile court terminating parental rights under Neb. Rev. Stat. § 43-209(6) (Reissue 1978) must be supported by clear and convincing evidence and then proceeded to terminate parental rights absent the necessary clear and convincing evidence.

There is no question but that the mother in the instant case experienced difficulties in raising her children. Before she was 19 she was the mother of three children and divorced from her husband.

But, as the majority notes, she apparently recognized her need to obtain some training so that she could provide for her children financially and emotionally. It is for that reason that she joined the military service and went on active duty, leaving her children with the State until she obtained the necessary training so she could return and provide a home for her children.

In the instant case there was no evidence of any physical abuse by the mother toward the children. It appears from the record that just at the time that the mother was ordered to give up her children she had made substantial strides in providing for her children. The record reflects that at the time of the termination hearing she had obtained housing for herself and her three children, obtained adequate furnishings for herself and her three children, cooperated fully with court personnel, and had obtained a marketable skill. It may very well be that we would wish for all families to be so constituted that all children enjoy all of the benefits that are often provided by well-trained, middle-class families. Such, however, is not the reality of life, and we should not be so quick to terminate parental rights because of a mother's inability to provide her children with as much as a potential adoptive parent might provide. I would have reversed and remanded.

CLINTON, J., joins in this dissent.