## In re Interest of James Stoppkötte, Jr., et al., Minor Children.
## State of Nebraska et al., Appellees, v. Donna Stoppkotte et al., Appellants.

312 N.W.2d 454

Filed November 13, 1981.   No. 44042.

Lloyd W. Kelly of Kelly & Kelly for appellants.

James D. Livingston of Cunningham, Blackburn, VonSeggern, Livingston, Francis & Riley and Stephen Von Riesen, Hall County Attorney, for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

Appellants, James and Donna Stoppkotte, appeal from an order of the District Court for Hall County, Nebraska, affirming an order of the Hall County Court terminating appellants' parental rights in their five children, James, Jr., Trinda, Mindy, Maria, and Joseph.

The first juvenile petition, filed March 26, 1979, alleged that Mindy, Maria, and Joseph, ages 6, 3, and 5 months, respectively, were children within the meaning of Neb. Rev. Stat. § 43-202(2) (Reissue 1978) in that their mother left home and her whereabouts was unknown, and that they lacked proper parental care by reason of the fault and habits of their parents. The second petition, filed April 25, 1979, alleged that James, Jr., and Trinda, ages 10 and 8, respectively, were children within the meaning of Neb. Rev. Stat. § 43-202(2) (Reissue 1978) in that they lacked proper parental care because their parents were both alcoholics and neglected the care of the children when drinking. It further alleged that the parents failed to provide proper medical, dental, and visual care for the children.

On April 25, 1979, a hearing was held to determine temporary custody of the children. The parents were present with their attorneys, as were the guardian ad litem and the county attorney. Evidence at this hearing showed that Mrs. Stoppkotte disappeared March 17, 1979, and her whereabouts was unknown until March 23, 1979. Grand Island Police Officer Gary Wayne Schwieger and Hall County Department of Public Welfare worker Margaret McClaren testified that they removed the children from their grandmother's

home on March 22, 1979, after receiving reports that the children's mother had abandoned them and that the grandmother could not take care of them. Upon arrival at the Stoppkotte home, they learned that James and Donna Stoppkotte and their five children were living in the living room of the grandmother's two-bedroom home. Also living in the home was Mr. Stoppkotte's older brother. McClaren testified that the children were dirty and lacked personal hygiene. The home was a mess and unkept. In McClaren's opinion, she felt the grandmother was unable to care for the children because she was 79 years old and crippled. There were no clean clothes and only one baby bottle. Joseph, the youngest at 5 months, had a severe head cold. McClaren and Schwieger removed the children and took them to Children's Village in Grand Island, Nebraska. When they returned, Mr. Stoppkotte was home. They explained to him what they had done and asked that he get some clothing for the children. Mr. Stoppkotte told them he had not seen his wife since March 17, 1979. McClaren testified that the following Monday, March 26, 1979, Mrs. Stoppkotte called her and said she was back.

Testimony showed that the children were in need of medical care at the time they were removed from the home. Four of the children had worms. Temporary custody was placed in the Hall County Department of Public Welfare pending further disposition.

On August 24, 1979, an adjudication hearing was held. At this hearing the parents admitted the allegations contained in the petitions. Both parents admitted being alcoholics. At the hearing, evidence was taken.

Exhibit 1 was a police report involving Mrs. Stoppkotte's absence. Mrs. Stoppkotte said in the report that she was on her way to get some beer about 11:30 the morning of March 17, 1979, when she stopped at a friend's home to make a telephone call. She stayed there for a while and had a few beers, then left with a man to go pick up the beer. According to Mrs. Stoppkotte, the

man drove to his home after picking up the beer, dragged her inside, and raped her several times. She reported the man locked her in his home for the entire week and forced her to have intercourse between 35 and 40 times during the week. An investigation into the incident discredited Mrs. Stoppkotte's story.

Other exhibits involve psychological evaluations of Donna, James, and the five children. The entire family was seen at the Mid-Nebraska Community Mental Health Center in Grand Island, Nebraska. Mrs. Stoppkotte was diagnosed as having alcohol addiction. She was recommended to receive treatment at the center and was urged to attend Alcoholics Anonymous (AA) meetings. Mr. Stoppkotte was diagnosed as being an excessive habitual drinker. He was urged to receive alcohol treatment.

James, Jr., the oldest child, had been seen by the center before in regard to suicidal tendencies. Reports indicated he had a low self-concept and lacked adequate social skills to get along with his peers. He received individual therapy at the center.

Another exhibit indicated that the school nurse had urged Mr. and Mrs. Stoppkotte to seek dental and visual care for their oldest son, James, Jr., for the last 4 years. The remaining exhibits were dental reports showing extensive work needed by the children at the time they were removed.

On May 8, 1979, Mrs. Stoppkotte voluntarily admitted herself into the Hastings Regional Center, Hastings, Nebraska, for treatment of alcoholism. She checked out of the program after only 3 days. Reports indicated that she had a poor view of her drinking problem.

The children were adjudicated minors in need of special supervision and temporary custody was to continue in the Hall County Department of Public Welfare. Arrangements were made for the rehabilitation of Mr. and Mrs. Stoppkotte. In July 1979 an agreement was entered into between the parents and the Hall County Department of Public Welfare. The conditions

of the agreement were as follows: (1) Bring all outstanding bills and wage statements to the Hall County Department of Public Welfare office so the budget could be worked out; (2) File for bankruptcy if necessary; (3) Attend AA meetings at least once per week and obtain written verification of attendance; (4) Continue to work with William W. Little of the Mid-Nebraska Community Mental Health Center; (5) Donna Stoppkotte should find employment and should cooperate with vocational rehabilitation; (6) Find more adequate housing prior to return of the children; and (7) Visit the children on a regular basis.

On January 3, 1980, a dispositional hearing was held. A motion to terminate parental rights which had been filed the previous day was withdrawn and testimony was heard on the rehabilitation progress of Mr. and Mrs. Stoppkotte since the adjudication hearing.

Reports from the Mid-Nebraska Community Mental Health Center, McClaren, and Rebecca Salmon of the Hall County Department of Public Welfare indicated progress of the children showed that they were adapting well to foster care. The opinions of social workers and mental health specialists indicated the children would be better off removed from their parents and remaining in foster care.

McClaren testified that she had tried to work with Mr. and Mrs. Stoppkotte to rehabilitate themselves. She indicated that they had complied with very few of the conditions they agreed upon. The entire testimony at this hearing showed that the parents had failed to comply with any of the conditions and to rehabilitate themselves. The court warned the parents of the consequences of their acts and gave them until March 28, 1980, to comply with the conditions. The only condition complied with was visitation of the children. On several occasions, Mr. Stoppkotte did not show up and Mrs. Stoppkotte had been drinking.

A motion to terminate parental rights was filed March 14, 1980. A hearing on the motion was held

March 28, 1980. Testimony showed a lack of compliance with the conditions of the agreement. On February 19, 1980, Mrs. Stoppkotte was voluntarily admitted to Valley Hope Association in O'Neill, Nebraska. She removed herself from the program March 1, 1980, and never returned. Testimony indicated that both parents were still alcoholics and were not doing anything to cure the situation. Because of the lack of rehabilitation after 1 year, the trial court entered an order terminating parental rights on June 6, 1980. Appeal was taken to the District Court for Hall County and the decision of the county court was affirmed on January 5, 1981. After a motion for new trial was overruled, both parents appealed to this court.

An appeal from an order terminating parental rights requires a de novo review. *In re Interest of Bird Head,* 209 Neb. 575, 308 N.W.2d 837 (1981). An order of the juvenile court terminating parental rights under Neb. Rev. Stat. § 43-209 (Reissue 1978) must be based on clear and convincing evidence. *In re Interest of Kimsey,* 208 Neb. 193, 302 N.W.2d 707 (1981); *In re Interest of Hiatt,* 209 Neb. 195, 307 N.W.2d 108 (1981).

The right of parents to maintain custody of their child is a natural right subject only to the paramount interests which the public has in the protection of the rights of a child. *In re Interest of Kimsey, supra.*

The rule has long been established in this state that courts may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right. *In re Interest of D.,* 209 Neb. 529, 308 N.W.2d 729 (1981). Courts cannot deprive a parent of the custody of a child merely because a parent has limited resources or financial problems or is not socially acceptable, nor because the parent's lifestyle is different or unusual. Neither can a court deprive the parent of the custody of a child merely because the court reasonably believes that some other person could better provide for the child. *In re Interest*

*of D., supra.* This is not the situation here. A review of the record indicates that the parents are unfit to perform their duties since they are alcoholics and have not properly provided for their children's needs. We have said before that the best interests of the child, not that of the parents, is the primary concern in deciding custody cases. *In re Interest of Wood and Linden,* 209 Neb. 18, 306 N.W.2d 151 (1981). The parents in this case were given every opportunity to rehabilitate themselves. After 1 year they were still not able to correct their problems. Any effort to rehabilitate themselves was minimal. We said in *In re Interest of McKee,* 208 Neb. 623, 304 N.W.2d 918 (1981), that when natural parents cannot rehabilitate themselves within a reasonable time after the adjudication hearing, the best interests of the child or children require that a final disposition be made without delay. In the case at bar, the evidence is clear and convincing that the parents have continuously and repeatedly neglected their children and failed to discharge their duties of parental care and protection.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I must respectfully dissent. I do not believe that the evidence in this case clearly and convincingly establishes that the parental rights of the parents must be terminated. Admittedly, the evidence discloses that the parents are chronic alcoholics and have not been very successful in attempting to rehabilitate themselves. I do not believe that a year is a sufficient period of time in which to determine that the condition of the parents is such that it cannot be corrected. To be sure, there are never any perfect solutions in cases of this nature. The courts are always confronted with deciding whether it is better to terminate after a brief time and find permanent homes for children, or to wait awhile in hopes that the natural parents may rehabilitate themselves and once again have custody of their children. If the

mother in this case was afflicted with a physical ailment which caused these problems, we are not likely to terminate parental rights so quickly as we are because of the emotional problems related to drinking.

The majority notes that the court warned the parents of the consequences of their acts and gave them nearly 90 days to comply with certain conditions, none of which were met except visitation with the children. One who is familiar with the problems of alcoholics might recognize that imposing a 90-day time frame on an alcoholic might only tend to drive him further to drink. The majority notes that because of the lack of rehabilitation after 1 year, the trial court entered an order terminating the parental rights. I believe that under the circumstances 1 year was inadequate. I would continue foster care for some additional time in hopes that the rights of the parents could be permanently restored. It appears to me that there will be adequate time to terminate parental rights if no other alternative exists.