IN RE INTEREST OF MICHELLE LEVEY ET AL., CHILDREN
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
PATRICIA LEVEY, APPELLANT.

317 N.W.2d 760

Filed March 26, 1982. No. 44306.

Waggoner Law Office, for appellant.

Ron Lahners, Lancaster County Attorney, and Toni G. Thorson, for appellee.

J. Michael Rierden, guardian ad litem.

Tim Sindelar, for natural father.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

WHITE, J.

This is an appeal from the separate juvenile court of Lancaster County, Nebraska, from an order ter-

minating the parental rights of appellant, Patricia Levey, in her children, Michelle, Scott, and Todd Levey. Harold Levey, natural father of the children, was divorced from appellant in 1975. Throughout the proceedings in question, Harold Levey was represented by court-appointed counsel and had authorized counsel to relinquish his parental rights. Harold Levey is not a party to this appeal. We affirm.

On or about January 27, 1977, appellant placed her daughter, Michelle Levey, in the temporary custody of Child Protective Services. On or about March 19, 1977, appellant placed her sons, Scott and Todd Levey, in the custody of Child Protective Services as well. At the time of their placement, Michelle's age was 5 years 8 months, Scott's age was 4 years 3 months, and Todd's age was 2 years 11 months.

At the initial hearing on May 25, 1977, appellant admitted she had no home and was unable to provide proper care and supervision for the children. On May 26, 1977, the children were adjudicated dependent children under Neb. Rev. Stat. § 43-202(1) (Reissue 1978) and were committed to the custody of the Lancaster County Division of Public Welfare to be placed in foster care. On November 10, 1977, the court entered an order continuing custody in the Lancaster County Division of Public Welfare after it was determined that circumstances had not changed.

Between May 25, 1977, and November 10, 1977, appellant visited her children only twice. During the spring and early summer of 1978, appellant visited her children with some regularity; however, between September 8, 1978, and October 23, 1978, appellant failed to visit her children. After several continuances, a hearing to review appellant's progress was held October 23, 1978. On October 25, 1978, the court continued custody in the Lancaster County Division of Public Welfare and directed the appel-

lant to correct the conditions of dependency. Sometime during November 1978 appellant moved to Colorado without leaving an address with the Lancaster County Division of Public Welfare. On February 22, 1979, appellant sent a letter to Susan Hendricks of the Lancaster County Division of Public Welfare informing Hendricks of her address and what she had been doing.

A supplemental petition to terminate parental rights was filed on March 23, 1979. Repeated efforts to contact the appellant were unsuccessful, so notice was served by publication. The termination hearing was held on May 23, 1979. Appellant did not appear; however, her former counsel was appointed to represent her at the hearing. On May 24, 1979, the court entered an order terminating her parental rights. The court found that appellant had failed to correct the conditions of dependency and determined the children to be neglected under § 43-202(2). The court also found that grounds for termination were present under Neb. Rev. Stat. § 43-209(1) and (6) (Reissue 1978). The children were committed to the custody of the state Department of Public Welfare with instructions to place them for adoption.

On September 18, 1979, almost 4 months after the hearing on termination, appellant appeared by counsel and moved to reopen the adjudication and to restrain the Department of Public Welfare from consenting to the adoption on the allegation that she had no actual notice of the hearing held on the 23rd day of May 1979 to terminate her parental rights. A hearing on appellant's motion was held on October 2, 1979. The court found that appellant had not been given actual notice and that the service by publication was defective. The court found that the letter appellant wrote to Susan Hendricks, although somewhat illegible, did contain her correct address and zip code. Adjudication was set aside and a new trial on the supplemental petition was granted on October

19, 1979. At that hearing, the court found that appellant had no contact with her children from September 26, 1978, until October 1979. The court also found that appellant had not provided care or support for the children since January 27, 1977, except for small amounts of clothing furnished prior to September 26, 1978. The court adjudicated the children to be neglected under § 43-202(2), but held that there was no showing by clear and convincing evidence that appellant had abandoned the children for 6 months or more prior to the filing of the supplemental petition. The court ordered appellant to present a plan to correct the conditions of neglect within 30 days and then gave her an additional 60 days to demonstrate that she had corrected the conditions of neglect. The termination hearing was continued.

On December 31, 1979, the court, after submission and approval of a plan to correct the conditions of neglect, ordered appellant to correct the conditions of neglect. Between December 31, 1979, and October 30, 1980, there were several dispositional hearings and the court granted appellant additional time to correct the conditions of neglect and dependency.

In January 1981 the prospective adoptive parents and current foster parents of the children filed a petition for intervention. The court allowed intervention over appellant's objections.

On February 27, 1981, a hearing was held to determine if appellant's parental rights should be terminated. On March 2, 1981, the court terminated appellant's parental rights. The court found that there had been no improvement in appellant's child-care skills, the visitations were harmful for the children, and that it was in the best interests of the minor children that the parental rights be terminated.

Appellant contends that the trial court erred in its decision to terminate parental rights because there was insufficient evidence to support the decision and because the decision is contrary to law.

An appeal from an order terminating parental rights requires a de novo review upon the record. *In re Interest of Stoppkotte,* 210 Neb. 1, 312 N.W.2d 454 (1981).

The right of a parent to maintain custody of his or her children is a natural but not an inalienable right subject only to the paramount interest which the public has in the protection of the rights of a child. *In re Interest of Stoppkotte, supra; In re Interest of J.L.L.,* 209 Neb. 76, 306 N.W.2d 175 (1981); *In re Interest of Kimsey,* 208 Neb. 193, 302 N.W.2d 707 (1981).

The primary consideration in any case involving termination of parental rights is the best interests of the children. *In re Interest of Wood and Linden,* 209 Neb. 18, 306 N.W.2d 151 (1981); *In re Interest of Morford,* 207 Neb. 627, 300 N.W.2d 795 (1981).

The juvenile court may terminate parental rights when it finds such action to be in the best interests of the children and where such action is supported by clear and convincing evidence that the parent has substantially and continuously or repeatedly neglected the children and refused to give them the necessary parental care and protection. *In re Interest of J.L.L., supra; In re Interest of McKee,* 208 Neb. 623, 304 N.W.2d 918 (1981).

Even though an appeal of a juvenile proceeding is heard de novo upon the record, findings of fact by the juvenile court should be accorded great weight because it heard and observed the parties and witnesses, and those findings should not be set aside on appeal unless they are against the weight of evidence or there is a clear abuse of discretion. *In re Interest of J.L.L., supra; In re Interest of McKee, supra.*

The record is extensive, containing testimony and exhibits held over a 4-year period. The children were in foster care for 4 years prior to termination. The record indicates that the appellant, at the time she placed the children in foster care, could not con-

trol them. The evidence and the testimony produced over the 4-year period indicate that the same is true today. There is evidence that the children became very anxious during visitations and at some points even became physically and vocally violent toward appellant. At the April 2, 1980, hearing, Dr. Eli S. Chesen, psychiatrist, testified that he felt that it was in the best interests of the children to discontinue visitation. Virtually all of the psychiatric testimony indicates that the children needed some sort of permanence in their lives and needed to stabilize their position with their foster parents. Dr. Thomas Jaeger testified that he felt that Scott and Todd Levey had negative oppositional feelings toward visitation and their mother. He also testified that Michelle wanted to stabilize her position with her foster parents. Dr. Jaeger further testified to the fact that there had been a certain bonding which had occurred with the children's foster parents over the 4 years. It was Dr. Jaeger's recommendation that the children also needed some form of permanence in their lives before it was too late.

Dr. Keith Leech, a clinical psychologist, testified that he felt Patricia Levey, with the proper training and psychotherapy, could at some point maintain a meaningful life and handle the parenting duties. He could not, however, state with any certainty how long it would take. Since 1977 appellant has been told that she needs to seek help and training in developing her parenting skills. She has made a poor attempt at improving those skills. The evidence indicates that the children still do not identify with appellant as their mother and have no respect for her.

Appellant abandoned her children from September 1978 until October 1979. Her only contact with them was a Christmas card. She has furnished virtually no support for the children since January 1977, yet she states that she has approximately $4,000 to $5,000 in some sort of an account in Colorado and that she

can make as much as $2,000 a day working as a model in Colorado. Her attempts at correcting the conditions of dependency were slight. She has no job and the prospect of providing a stable home and life for the children is dim. The children recognize their foster parents as their psychological parents and have the desire to stabilize that position with them. The children have virtually rejected appellant and look on the visitations with their biological mother with extreme anxiety.

We agree with the juvenile court that the children's status cannot remain in limbo forever. The record reflects that it is in the best interests of the children to terminate appellant's parental rights. Accordingly, we must affirm.

AFFIRMED.