323 N.W.2d 78 (1982)
212 Neb. 399
In re Interest of Rod Lee McKINZIE, a child under 18 years of age.
STATE of Nebraska, Appellee,
v.
Deborah Jo BRUNER, Appellant.
No. 81-770.
Supreme Court of Nebraska.
August 6, 1982.
Paul M. Conley and Leroy P. Shuster, Lincoln, for appellant.
Michael G. Heavican, Lancaster County Atty., and Richard J. Hautzinger, Lincoln, for appellee.
Mariclare Thomas, guardian ad litem.
Heard before KRIVOSHA, C. J., and BOSLAUGH, McCOWN, HASTINGS, and CAPORALE, JJ.
*79 CAPORALE, Justice.
Appellant, Deborah Jo Bruner, appeals to this court from an order of the separate juvenile court of Lancaster County, Nebraska, dated September 14, 1981, which terminated her parental rights to Rod Lee McKinzie, a minor born September 22, 1970. That order also terminated the parental rights of the natural father, Herbert Rodney McKinzie, Sr., but that portion of the order has not been appealed.
The two issues are (1) whether the order of the juvenile court terminating the parental rights of the appellant is supported by the evidence, and (2) whether the decision to terminate appellant's parental rights is in the best interests of the minor. We reverse.
Neb.Rev.Stat. § 43-202 (Reissue 1978) provides in pertinent part as follows: "The juvenile court in each county ... shall have...
"(1) Exclusive original jurisdiction as to any child under the age of eighteen years, who is homeless or destitute, or without proper support through no fault of his parent, guardian, or custodian;
"(2) Exclusive original jurisdiction as to any child under the age of eighteen years... (b) who lacks proper parental care by reason of the fault or habits of his parent, guardian, or custodian; (c) whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the" health, morals, or well-being of such child; (d) whose parent, guardian, or custodian neglects or refuses to provide special care made necessary by the mental condition of the child ...."
This matter was first brought to the attention of the juvenile court by a petition filed April 22, 1977, alleging the child to be without proper support through no fault of his parents. A supplemental petition was filed on June 24, 1981, alleging that the child was without proper care and supervision due to the faults and habits of his parents, and sought termination of the rights of the parents.
As we have stated in the past, the right of a parent to maintain custody of his or her child is a natural but not an inalienable right; the public has a paramount interest in the protection of the rights of a child. In re Interest of Shepherd, 211 Neb. 313, 318 N.W.2d 288 (1982); In re Interest of J. L. L., 209 Neb. 76, 306 N.W.2d 175 (1981). However, courts may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship, or has forfeited that right. In re Interest of Shepherd, supra; In re Interest of D., 209 Neb. 529, 308 N.W.2d 729 (1981). Furthermore, an order of the juvenile court terminating parental rights must be based on clear and convincing evidence. In re Interest of Shepherd, supra; In re Interest of Farmer, 210 Neb. 500, 315 N.W.2d 454 (1982); In re Interest of Hiatt, 209 Neb. 195, 307 N.W.2d 108 (1981); Santosky v. Kramer,__ U.S.___, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
With those rules in mind we review the record of the separate juvenile court de novo, as we are required to do. In re Interest of Shepherd, supra; In re Interest of Spradlin, 210 Neb. 734, 317 N.W.2d 59 (1982); In re Interest of Farmer, supra.
The record clearly and convincingly establishes that the minor child suffers from a mild brain dysfunction and from an attention deficit with hyperactivity. He manifests behavioral and physiological problems. The mother voluntarily placed the child with the Lancaster County Division of Public Welfare for foster care in October of 1976. On May 4, 1977, the minor was adjudged a dependent child as defined in § 43-202(1). He was thereupon committed to the temporary legal custody of the Lancaster County Division of Public Welfare with continued placement in a foster home. A series of hearings and placements followed, including a trial placement with the appellant. It became obvious during this period of time that this child simply required more care and attention than the mother, well intentioned as she may have been, was capable of providing. The mother *80 recognizes this fact, although she, understandably, appears unable to accept it fully. In December of 1980 the appellant stated that she planned to relinquish the child for adoption and discussed that plan both with the separate juvenile court and with a social agency. Appellant, however, changed her mind in that regard. When the child became aware that such a plan was being considered he became even more depressed and exhibited even more behavioral problems. In May of 1981 the court changed the custody of the child from the Lancaster County Division of Public Welfare to the Department of Public Welfare, State of Nebraska.
The record clearly and convincingly establishes that the minor child is in need of a consistent and stable home environment which will provide him with a sense of belonging. The record also establishes that the mother has been unable to provide such an environment and sense of belonging. What the record does not show is that such an environment cannot be provided without terminating the mother's rights or that it is in the best interests of the child that those rights be terminated. Indeed, the record demonstrates that he has an attachment both to his mother and to his younger sister who is living with the mother. The record contains little evidence as to the likelihood of finding adoptive parents with the requisite skills and resources to provide this now almost 12-year-old boy with the environment and emotional support which he so clearly needs. Nor is there any showing he cannot be provided that environment and emotional support by continuing his custody in the Department of Public Welfare of the State of Nebraska, with his mother having rights of visitation.
That portion of the order of the separate juvenile court of Lancaster County, Nebraska, dated September 14, 1981, which terminates appellant's parental rights in the minor child is reversed. That portion of the order continuing custody of the child in the Department of Public Welfare is affirmed.
AFFIRMED IN PART, AND IN PART REVERSED.
CLINTON, J., participating on briefs.
BOSLAUGH, Justice, dissenting.
The majority opinion finds that the child in question requires more care and attention than the mother can (or is willing to) provide. It concludes that the solution is not to terminate the mother's rights, but to institutionalize the child so that the mother's right of visitation may be preserved. I find this an unacceptable solution and not one in the best interests of the child.
As long as the child remains in a proper foster care setting, and gets the necessary medication and psychosocial discipline and attention, his disorders may be controllable to some degree. However, the witnesses testifying as to the child's condition stressed that the most important factor in this child's future is that he be placed in a stable situation.
There is considerable testimony in the record that, in spite of the medication and proper techniques in dealing with his hyperactivity, his worst behavioral episodes occurred during times when he viewed his future as unstable. Although he does have an attachment to his mother, as the majority states, the record is clear that this child has a tremendous desire and need for a stable homelife where he can be loved and raised like other children, and that he believes he will never be returned to his mother. The last thing this child needs is to be continued in foster care with the accompanying ambivalence of a dim hope that he may someday return home, yet the belief that he will never be able to.
I believe the record shows, by clear and convincing evidence, that a stable environment for this child cannot be obtained without terminating the appellant's parental rights. During the trial placement of the child with his mother in 1979-80, there were numerous weekends when she placed both the child in interest and his sister in Cedars Home for Children in Lincoln because of "problems" she was having, either financial or personal. At the time of the disposition hearing the mother had finally obtained a full-time job, and her personal *81 problems centered around her second husband (not the child's father). When the child in interest went back into foster care, the trial court ordered that the second husband not be present during visitations between the child and mother, but the mother admitted that he was often there during visitations. The mother has moved numerous times during the pendency of this action, with each move being into a different school area. At the final disposition hearing she stated that she had separated from her second husband and had moved back to Lincoln from Eagle, but was not sure whether or not she would divorce the husband. There is nothing in the evidence to show that the mother intends to or is capable of providing even geographic stability for the child.
During the child's second stay in foster care, commencing in October 1980, the mother's efforts to visit the child became much less frequent. Pam Hughes, the child's foster mother from March 25, 1981, to June 4, 1981, testified there were only two visits between the mother and child during this time, both of them being initiated by the child himself. During the time the child was at the Nebraska Psychiatric Institute, the mother at first refused to visit him there because she did not agree with the welfare worker that the visits should be supervised. During the disposition hearing, which extended over a period of 2 or 3 weeks, she did visit him once, but only after earlier testimony that she had not visited him since he had been there.
The testimony shows that this sporadic visitation by the mother was extremely hard on the child. There is nothing in the record to demonstrate that the mother's visitation attitude will change. It is difficult to understand why this child should be left in a situation identical to that which drove him from "normal" foster care in a home setting to an inpatient setting at NPI.
While this child may not be as adoptable as children without his behavior disorders, the evidence does not show that adoption is not a viable alternative. There is evidence that when the mother was considering voluntarily relinquishing the child for adoption, the counselor from Lutheran Family and Social Services found a family willing to adopt him.
Our cases hold, generally, that it is in a child's best interests "that a final disposition be made without delay." In re Interest of McKee, 208 Neb. 623, 304 N.W.2d 918 (1981). See, also, In re Interest of Holley, 209 Neb. 437, 308 N.W.2d 341 (1981); In re Interest of Levey, 211 Neb. 66, 317 N.W.2d 760 (1982); In re Interest of Hastings, 211 Neb. 209, 318 N.W.2d 80 (1982). " `[W]e will not gamble with the child's future; [he] cannot be made to await uncertain parental maturity.'" State v. Souza-Spittler, 204 Neb. 503, 511, 283 N.W.2d 48, 52 (1979). The majority opinion appears to ignore these cases, and disregards clear evidence that a stable situation is required for this child's best interests. It is the appellant herself who provides the lion's share of the instability in this child's life.
I would affirm the judgment of the juvenile court.
HASTINGS, J., joins in this dissent.