IN RE INTEREST OF THOMAS ANTHONY SPRADLIN, JR., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. ANNA MASTERSON SPRADLIN AND THOMAS ANTHONY SPRADLIN, SR., APPELLANTS.

317 N.W.2d 59

Filed March 5, 1982. No. 44334.

Dennis R. Keefe, Lancaster County Public Defender, and Michael D. Gooch for appellant Anna Spradlin.

Richard Douglas McClain for appellant Thomas Spradlin, Sr.

Ron Lahners, Lancaster County Attorney, and Toni G. Thorson for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

This appeal challenges an order entered by the separate juvenile court of Lancaster County, Nebraska, which placed the legal custody of a minor in the Lancaster County Department of Public Welfare for foster care. We affirm.

The appellants, Anna Masterson Spradlin and Thomas Anthony Spradlin, Sr., wife and husband and parents of the minor, assert the juvenile court erred in admitting the testimony of Dr. Robert Osborne, a Lincoln psychiatrist, over objection that a physician-patient privilege existed between him and each appellant, and in finding it to be in the best interests of the minor child that his legal custody be retained by the Lancaster County Department of Public Welfare, subject to reasonable rights of visitation by the natural parents.

Dr. Osborne had treated each of the appellants for several years prior to the proceeding in question. It is the appellants' position that, as a consequence of that relationship, a physician-patient privilege exists between Dr. Osborne and each appellant and therefore, absent a waiver of that privilege, Dr. Osborne was not competent to testify. *State v. Norwood*, 194 Neb. 595, 596-97, 234 N.W.2d 601, 603 (1975), addresses this issue as follows: "Appellants object to the admission of the evidence of two psychiatrists who had treated appellants. The question requires interpretation of former section 25-1207, R.R.S. 1943 [now Neb. Rev. Stat.

§ 27-504 (Reissue 1979)], which nullifies confidential communications to a physician in proceedings under the Separate Juvenile Court Act and 'regarding injuries to children.' The term 'injury' is comprehensive. Webster's Third New International Dictionary, p. 1164, states: 'INJURY, HURT, DAMAGE, HARM, and MISCHIEF mean in common the act or result of inflicting on a person or thing something that causes loss, pain, distress, or impairment. INJURY is the most comprehensive, applying to an act or result involving an impairment or destruction of right, health, freedom, soundness, or loss of something of value * * * .' An action to protect a dependent and neglected child necessarily involves a question of impairment of a child's right to parental protection and guidance with consequent loss or destruction of mental and physical health, and the right to a normal and adequate upbringing. . . . This indicates that former section 25-1207, R.R.S. 1943, was intended to be effective when the mental condition of a parent is in issue. In the judgment of this court the neglect of a child is an injury to the child's welfare and rights. It constitutes one of the exceptions referred to in the statute and the evidence was properly admitted." Appellants urge that we overrule *Norwood*. We decline to do so.

Dr. Osborne's testimony concerned the emotional stability of the natural parents of the minor and the effect of such problems in their care of the infant. There is no question but that the mental fitness of Mr. and Mrs. Spradlin is an issue in this proceeding, and the testimony regarding their capacity to discharge their parental responsibilities was relevant to the court's determination as to whether they should be permitted to retain legal custody of the child. Dr. Osborne's testimony was properly admitted.

We turn now to the second issue. Mr. Spradlin has lived in a custodial home directed by Mary Hepburn-O'Shea since October of 1977. Mrs. Spradlin lived in the custodial home during December of 1977, and then

from August of 1978. It was there that the couple met. They were married shortly after the November 27, 1980, birth of Anthony Spradlin, the minor child who is the subject of this proceeding. It appears that after the birth Mrs. O'Shea took the Spradlins into her own home so she could supervise the care of the child.

Mrs. O'Shea, who has a master's degree in social work and has over 25 years of experience, testified that both Mr. and Mrs. Spradlin were in need of constant supervision in order to make sure medications were taken, that meals were cooked, and to supervise their spending money. She testified that after the child was born she bought prepared formula for the infant to eat; however, she would have to remind Anna to bathe and change the infant. On December 14, 1980, Anna suffered an anxiety attack and was hospitalized for treatment. Mrs. O'Shea took care of the infant for 3 days until the child could be placed in foster care with Child Protective Services.

In Mrs. O'Shea's opinion, the appellants would not be able to care for the child without constant supervision: "I feel if, as I said in this courtroom last March, if someone took on Anna and Tom and the baby as a parent and was a parent to all of them. In other words, if you adopted all three of them and maintained a daily parental function, then I think they would function as parents and I certainly think that Anna has the warmth to show the baby but I think in the communication area and in times of situations that you have in child rearing through no fault of her own, she would be unable to do that and certainly Tom would be unable to. And I say this with a great deal of feeling for my clients."

Dr. Robert Osborne testified that Mr. Spradlin has been diagnosed as a chronic undifferentiated schizophreniac. Some of the characteristics of this condition were described as a high level of anxiety, a looseness or fragmentation of thought processes, easy distractibility, and inappropriate emotional responses. Mr. Spradlin has also shown certain autistic behavior and

experienced auditory hallucinations. Dr. Osborne stated that he treated Mr. Spradlin with most major antipsychotic medications; however, Mr. Spradlin has had only limited success in responding to the treatments. Nor did Dr. Osborne believe Mr. Spradlin would respond to psychotherapy, because he has a great deal of difficulty in verbal communications. Based upon his observations over several years in a sheltered environment, Dr. Osborne was of the opinion that Mr. Spradlin would not be able to function as a wage earner or housekeeper to support the family.

As to Mrs. Spradlin, Dr. Osborne testified that she had been diagnosed as having an acute exacerbation of chronic paranoid schizophrenia. Dr. Osborne stated that her behavior is characterized by sudden reoccurrences of psychotic beliefs that people are plotting against her or trying to do her harm. Mrs. Spradlin appears to be very vulnerable to situations which others would perceive as commonplace and to which she responds with great anxiety.

Due to the problems the appellants have in maintaining their concentration, plus their anxiety to stress and fragmentation in thought processes, Dr. Osborne was of the opinion that they would not be able to cope with the stress of raising a child. During direct examination, Dr. Osborne was asked: "Q. What type of difficulty in your opinion would they have as parents? A. Well, one is maintaining appropriate and adequate interest on an ongoing basis for another human being that's a hundred percent dependent upon them. The very nature of the illnesses they each have would tend to bias the probability that they could successfully rear a child, biased the probabilities against them heavily because of the very problem of maintaining interest or maintaining concentration and over any period of time with that infant or any other person, they would feel as that infant made demands on them for the intimacy required and the fondling that — the tenderness, the love and that, that they could maintain but it would be very sporadic. It

would be very come and go kind of proposition and they may in some instances lose interest in that; much as literally playing house and saying, okay, I'm tired of playing house. Let's go play something else and move off in some other direction and return when it interested them to return and not because of any anticipated need of the child they think the child might have such as changing or feeding or so on. But perhaps in response to cry from a child, it would be, in my estimation [sic], difficult to predict. And the demands of that infant are tremendous."

Dr. Osborne concluded that the illnesses afflicting the appellants would continue for a prolonged, indeterminate period of time. For these reasons, it was Dr. Osborne's opinion that the child should be placed in a foster home or adopted.

It should be noted that this is not a proceeding under Neb. Rev. Stat. § 43-209 (Reissue 1978) to terminate the parental rights of the Spradlins. Rather, this is a proceeding under Neb. Rev. Stat. § 43-208 (Reissue 1978), which provides in pertinent part: "When any child under the age of eighteen years shall be adjudicated to be a child as defined in subdivision (1), (2), or (4) of section 43-202, the court may permit such child to remain in its own home subject to supervision or may make an order committing the child to the . . . (5) care and custody of the Department of Public Welfare."

This section provides the statutory authority for the juvenile court to place the legal custody of a child it finds to be homeless, destitute, or lacking proper parental support in the Department of Public Welfare or other appropriate agency or home. It provides the court with the authority to place the custody of the child with a responsible party without terminating the parental rights of the natural parents.

Having reviewed this matter de novo upon the record as we are required, *In re Interest of Farmer, ante* p. 500, 315 N.W.2d 454 (1982); see, also, *In re Interest of Stoppkotte, ante* p. 1., 312 N.W.2d 454 (1981), and *In re*

*Interest of McKee,* 208 Neb. 623, 304 N.W.2d 918 (1981); and having in mind the rule that this court will give weight to the fact that the trial judge saw and observed the witnesses and the attitude of the parties at the trial, *Kringel v. Kringel,* 207 Neb. 241, 298 N.W.2d 150 (1980), we find appellants' second assignment of error to be without merit.

As we have held in the past, the right of a parent to maintain the custody of his or her child is a natural but not an inalienable right and the public has a paramount interest in the protection of the rights of a child. *State v. A. H.,* 198 Neb. 444, 253 N.W.2d 283 (1977). The first and primary consideration in any case involving the custody of a child is the best interests of the child. *State v. Loomis,* 195 Neb. 552, 239 N.W.2d 266 (1976); *Whitlatch v. Whitlatch,* 206 Neb. 527, 293 N.W.2d 856 (1980).

AFFIRMED.