IN RE INTEREST OF HOLLENBECK, A CHILD UNDER THE AGE OF 18 YEARS.
STATE OF NEBRASKA, APPELLEE, V. RUTH DOROTHY L. HOLLENBECK, APPELLANT.

322 N.W.2d 635

Filed July 23, 1982. No. 81-758.

Wilbur C. Smith of Smith & Hansen, for appellant.

Donald L. Knowles, Douglas County Attorney, and Christopher E. Kelly, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

The appellant, Ruth Dorothy L. Hollenbeck, who is the mother of the child in interest, appeals from an order of the separate juvenile court terminating her parental rights in her youngest daughter. The father's parental rights were also terminated by this order, but he has not appealed.

On September 11, 1980, a petition was filed in the separate juvenile court, alleging the child in interest, who was born December 13, 1974, was a child within the meaning of Neb. Rev. Stat. §§ 43-202(2)(b) and 43-209(2) (Reissue 1978), in that she was a child under 18 years of age lacking proper parental care by reason of the fault or habits of her parents. The petition specifically alleged that the father had sexually abused the child; that the mother was aware of the father's propensities to sexually abuse his daughters, yet refused to remove or protect the child; that the child, at age 5, displayed inappropriate sexual behavior; and that both parents had on numerous occasions left the child without adult supervision or protection for prolonged periods of time. On the date the petition was filed the child was placed in immediate temporary foster care.

At the detention hearing held on September 22, 1980, the child in interest testified in chambers, in the presence of the court and her guardian ad litem, that her mother worked all day and that her father was her babysitter, and that from the time she was 4 or 5 years old her father would leave her at home alone for periods of time during the day. On one of these occasions, during the winter, she was locked out of the house and had to remain outside approximately an hour until he returned home. Also at this hearing an 8-year-old neighbor child testified that on one occasion she saw the child in interest, the father, and another unrelated child in the pool in the Hollenbeck's backyard and that the father removed the swimming suits of both the child in interest and the neighbor child and fondled their breasts and vaginal areas. Following this hearing the court ordered that the child remain in foster care pending an adjudication hearing.

The appellant's answer, filed March 2, 1981, denied the allegations of the petition and alleged that divorce or separation from her husband was con-

trary to her religious faith, that she was employed, and that her husband had a 100 percent service-connected disability. It further alleged that the child's inappropriate sexual behavior could be attributed to the normal curiosity of a small child "and should not be interpreted in any other way."

An adjudication hearing was held on March 9 and 10, 1981. The evidence adduced at this hearing showed that the child in interest was the youngest of the four children of the parents and that a petition filed in the interest of all four children in 1977 alleged acts of sexual abuse by the father upon the two older daughters and refusal by the mother to acknowledge the incest problem in the family. All four children were removed from the home at that time. Later, the allegations of sexual abuse were stricken from the petition by the county attorney. The parents then admitted the remaining allegations that the three older children were homeless or destitute, or without proper support through no fault of the parents, and the three older children were placed in foster care. The child in interest here was returned to the parents.

At the time of the present case the middle daughter remained in foster care, the oldest daughter was emancipated, and the son was incarcerated in the Lincoln Correctional Center.

At the adjudication hearing both of the older daughters testified as to the father's sexual abuse of them. The oldest daughter testified that she had told her mother about these occurrences at one time, but that the mother did not appear to understand. Thereafter, this daughter did not attempt to again discuss the problem with her mother. However, this daughter did testify in her mother's presence at a mental health board hearing, well before the events alleged in the instant petition, that her father had sexually abused her. At one point she told the appellant that, in order to get the older children back,

the appellant would have to divorce the father. The appellant's only comment to this was that she did not know what to do. The middle daughter also testified that she had been sexually abused by the father, but did not attempt to discuss it with the appellant because the appellant had seemed to ignore the older daughter. The middle daughter further testified that the child in interest had told her that she had been sexually fondled by the father. The child in interest testified in chambers that her father had sexually abused her.

The foster mother of the child in interest testified the child had told her that the father had molested her. In addition, the foster mother testified that the child would have nightmares after visits with both parents, during which she would cry out, "Daddy, don't. Please don't do that." When awakened, she would not remember the dreams. The nightmares did not occur when she visited only with her mother.

Several witnesses testified to unusual sexually oriented behavior on the child's part, both before and after she had been placed in foster care. Testimony on this issue came from playmates, the playmates' parents, and the child's foster mother. From the relating of these activities at the hearing, it can hardly be said that these activities and the child's vocabulary of sexual idiom were attributable "to the normal curiosity of a small child." The foster mother testified that she had worked with many children who were the victims of incest, but she had never seen one with as much "acting-out" behavior as demonstrated by this child.

Several neighbors testified that they often saw the child in interest, at age 4 or 5, walking around the neighborhood and crossing busy streets by herself. One neighbor, her former babysitter, testified that on several occasions she saw the child cross arterial intersections by herself when, according to the child, she had been sent by her father to mail a letter. This

witness stated that she spoke to the appellant about these incidents but the pattern continued. Another neighbor testified that the child in interest was at her house, playing with the neighbor's son, for long periods of time 3 or 4 days a week, without either parent checking on her whereabouts. This neighbor also testified that at times she would feed the child lunch, because other times when she had sent the child home for lunch, she saw her "zigzagging" back and forth across the street to other neighbors' houses until she found one that would feed her lunch. A neighbor also testified that the child once said that she did not want to go home because her father made her take naps all the time and that she did not want to go home to take naps.

The mother testified that this was the first time she had heard anything about sexual abuse of any of the children by the father. When pressed, she made a semantic distinction between "hearing" about the allegations and "reading" them in the numerous petitions and other papers involved in this proceeding and the previous proceeding concerning the older children. She stated that she did not believe the oldest daughter's testimony at the mental health board hearing, apparently because the daughter was not under oath at the time. It appeared from her testimony that she still did not believe the father had sexually abused any of the daughters and, if permitted by the court, she felt that it would be safe for the child in interest to return home where the father would be her primary caretaker. It is undisputed that the appellant did not contact any agencies to seek either family or individual counseling for herself or the child.

The evidence also showed that after the child in interest was placed in foster care and prior to the adjudication hearing, a 1-day evaluation of the mother and the child was conducted by the Nebraska Psychiatric Institute (hereafter NPI) at the request of

the State. The mother, foster mother, and the case-worker from the Department of Public Welfare were interviewed by Ben Cacioppo, a psychiatric social worker at NPI, while the child was separately inter-viewed by other NPI staff members. Cacioppo, who was called as a witness for the mother, testified that, as to the mother, "there seemed to be a lack of recognition of the seriousness of the issues for which the child was brought to us, and some denial of those issues." On cross-examination, he termed the mother's denial "massive," noting that the mother flatly denied any incest problem in the family, even "in light of all the past history of this case . . . ."

After the adjudication hearing the trial court struck count II A. of the petition, as irrelevant with reference to this child. It then specifically found the other allegations of the petition had been proved by clear and convincing evidence, and found the child in interest to be a child within the meaning of §§ 43-202(2)(b) and 43-209(2). The matter was con-tinued pending a disposition hearing.

The disposition hearing was held July 2, 1981. At this hearing the guardian ad litem of the child and the chief service officer for the juvenile court both testified that they felt the appellant was not amen-able to rehabilitation and recommended that her pa-rental rights be terminated. They based their opin-ion on her continuing denial of an incest problem within the family, and the fact that for over 4 years she had not investigated the allegations of incest re-garding her husband, had left the child in interest in his care in spite of the previous court proceedings in the interest of the older children, and had never at-tempted to seek counseling in the matter. A written report prepared by these two witnesses and a Child Protective Services worker, another court service of-ficer, and a Department of Public Welfare foster care worker recommended termination of both par-ents' parental rights. On July 6, 1981, the court

found that neither parent was "amenable for [sic] treatment that would enable them to become adequate parents," and terminated their parental rights in the child in interest.

A hearing on the appellant's motion for new trial was held on October 7, 1981. At this hearing the appellant testified that she had divorced her husband in July 1981, sold the family home in Omaha, and had moved to Glenwood, Iowa, where she was living with relatives. She testified that she had divorced her husband because he was unreasonable and did nothing but rant about the court case. Although she testified as to what she termed her "future plans," with an eye toward regaining custody of her two younger daughters, such "plans" contained only a vague reference to counseling, and she was not participating in counseling at the time of the hearing.

Also at this hearing there was testimony that the middle daughter had run away from the foster home where she and the child in interest had been staying and that the child in interest had been moved to a different foster home. A document from a Veterans Administration hospital in San Diego, received in evidence at this hearing, showed that the father had undergone treatment at that facility and had been discharged on September 1, 1981. Finally, although the appellant did eventually admit on cross-examination that she now believed that her husband had sexually abused their daughters, this admission came only reluctantly and only after a lengthy exchange with the guardian ad litem, who was questioning her. Following this hearing the separate juvenile court overruled the mother's motion for new trial. This appeal followed.

The appellant's first assignment of error argues that she was denied due process of law "(a) . . . when acts which constitute the sexual [sic] incest complained of had been adjudicated and dismissed

in a prior case and the minor child . . . was released to her natural parents . . ." and that "(b) Due process of law has been violated when the alleged acts of sexual [sic] incest were committed in the calendar year of 1976, and Section 29-110 R.R.S. Neb. 1943, provides that the statute of limitations runs three years after the alleged acts of incest."

As to assignment (b), Neb. Rev. Stat. Ch. 29 (Reissue 1979) deals only with criminal procedure. This case is not a criminal prosecution and the cited "statute of limitations" has no application.

As to assignment (a), the petition alleged acts of incest by the father against this child which took place after the 1977 proceeding, and that the appellant had failed to remove or protect this child from the father when she knew that the older daughters had "continually related incidents of being sexually [abused] by" the father. It is clear from the petition that the allegations against the mother were not those of the father's incest against the older daughters but, rather, allegations that, despite her notice of the father's propensities, she had taken no steps to protect the child. Assignment (a) stems from an incorrect reading of the petition, and does not support the appellant's claim of denial of due process. The entire assignment is without merit.

The appellant's second assignment is similar to the first, in that she argues that the court should have struck count II B.1. of the petition "for the reason that these matters had previously been adjudicated . . . ." Count II B.1. states: "B. [Appellant], natural mother of said child, has failed and/or refused to remove or protect [the child in interest], being fully cognizant of the propensity of [the father] . . . for sexually molesting and manipulating his daughters, from [the father], towit:

"1. [The older daughters] have continually related incidents of being sexually [abused] by . . . natural father of said child, while in the care and

custody of [the parents] . . . ."

The previous adjudication to which the appellant refers in this assignment is described earlier in this opinion. Again, it must be noted that although the allegations of incest from the previous petition were dismissed by the county attorney, count II B.1. of the petition in the present case does not allege those acts of incest as part of the mother's neglect of the child in interest. Here it is alleged that, despite notice to her from the older daughters of the father's incestuous behavior against them, the mother took no steps to protect this child from a similar fate. The "relating" of incidents by the older daughters, as alleged in the challenged count, occurred after the 1977 proceeding. The issue was not adjudicated in the previous matter, and the trial court did not err in refusing to strike count II B.1. of the petition.

The appellant next assigns as error that the trial court erred in applying Neb. Rev. Stat. § 27-303 (Reissue 1979) of the *"Criminal Rule of Evidence* to form basis for its adjudication order to custody matters *civil in nature* and using past patterns of behaviour to demonstrate 'proof of motive, opportunity, intent, preparation, plan, knowledge (and) absence of mistake or accident.' "

In its order of April 29, 1981, which followed the adjudication hearing, the trial court stated: "The past pattern of behavior is relevant to the matters at issue herein for it demonstrates on the part of both parents 'proof of motive, opportunity, intent, preparation, plan, knowledge (and) absence of mistake or accident,' 27-303, R.R.S. 1943." The cited section actually comes from Neb. Rev. Stat. § 27-404(2) (Reissue 1979).

As to considering evidence of past patterns of behavior in making the adjudication, Neb. Rev. Stat. § 43-206.03(2) (Reissue 1978) states: "The adjudication portion of hearings shall be conducted by the judge without a jury, applying the customary rules

of evidence in use in trials without a jury." Section 27-404 is a part of the "customary rules of evidence," and thus it was not error for the trial court to receive such evidence at the adjudication hearing. In addition, Neb. Rev. Stat. § 43-218 (Reissue 1978) states: "This act shall be liberally construed to the end that its purpose may be carried out as provided in section 43-201." In this case, evidence of patterns of behavior were clearly relevant to the allegations against the appellant with reference to her notice of the father's actions. The assignment is without merit.

The appellant also assigns as error that the court "accepted opinion from lay witness where medical and psychiatric testimony was available to prevent prejudice." Apparently, the appellant is arguing that the court's refusal, based on lack of foundation, to receive in evidence certain medical records of the father was prejudicial to her. However, the appellant's rights were terminated because she had notice of the father's incestuous behavior and still refused to acknowledge the situation and protect the child. Evidence of the father's condition was irrelevant to the mother's case. This assignment is also without merit.

Finally, the appellant argues that the adjudication and disposition orders were contrary to the law and the evidence. The separate juvenile court specifically found that the allegations of the petition had been proved by clear and convincing evidence. "An appeal of a juvenile case is heard in this court by trial de novo upon the record; notwithstanding, findings of fact by the trial court will be accorded great weight because the trial court heard and observed the parties and witnesses . . . ." *State v. Logan,* 204 Neb. 204, 206, 281 N.W.2d 753, 754 (1979).

Parental rights may be terminated for substantial, continuous, and repeated neglect of a child and a failure to discharge the duties of parental care and

protection. *In re Interest of Hiatt,* 209 Neb. 195, 307 N.W.2d 108 (1981). The evidence which has been summarized was clear and convincing and supports the adjudication order and the disposition order.

As to the disposition order the evidence demonstrates that the appellant steadfastly refused to recognize the incest problem which existed in the family, despite the fact the family had been in court over that problem for more than 4 years. While the appellant testified at one point that she would divorce her husband "if necessary" in order to keep custody of the child in interest, she gave no indication that she considered it necessary until after her parental rights had been terminated by the order of July 6. Indeed, during the entire 4½ years the family was in court, she testified that she did not consider the possibility that the allegations against the father were true. In the face of all of these events, the evidence is overwhelming that the appellant did not confront the father about the allegations of incest and left the child in interest in the care of the father while she worked and went to school. The appellant's own witness testified that she utilized a "massive denial" mechanism in dealing with the entire matter. Even as late as the hearing on the motion for new trial, the appellant was barely able to admit that she now believed that her husband molested the daughters. That hearing also demonstrated that her belated divorce took place not because of the father's incestuous activities but because the appellant could no longer put up with "his bellyaching." Although the appellant argues that because of the divorce and its accompanying restraining order the father is now out of her life, the evidence shows the father is no longer an inpatient in any treatment facility and there is no assurance that he will not return to the family.

The appellant also argues that, prior to terminating her parental rights, the court should have de-

vised a rehabilitation plan for her. However, "[t]here is no requirement that the court must implement a rehabilitation plan for the parent of a child found to be dependent and neglected, and particularly if such a plan has very little chance of success and it would not be in the best interests of the child." *In re Interest of Carlson,* 207 Neb. 540, 543, 299 N.W.2d 760, 762 (1980). There we also noted: "The . . . children [in interest] were receiving no protection from recurrent sexual abuse. They were being exposed to completely unsatisfactory social conditions at home. They have a right to grow up in a healthy and wholesome environment. Each day's delay in making them available for permanent placement in such satisfactory surroundings causes such right to become increasingly unobtainable." *Id.* at 543, 299 N.W.2d at 762.

The same principle applies in this case. At the disposition hearing written reports and testimony indicated that any rehabilitation plan the court could devise for the appellant would have very little chance for success because she refused to recognize the incest problem. As we noted in *State v. Duran,* 204 Neb. 546, 552-54, 283 N.W.2d 382, 386-87 (1979): "The dispositional hearing affords the trial court an opportunity for a wide-ranging review of a child's complete social history apart from the basic circumstance of the adjudication hearing. It looks only to what is in the child's best interests for such child's future.

. . . .

". . . In reviewing the family history of appellant and the difficulties and present status of her other . . . children, the trial court correctly concluded that rehabilitative efforts would serve no useful purpose. We learn from the past. . . . The issue in a disposition hearing where a child has been found to be neglected or dependent is not the adjudicated offense with which the children are involved, but rather a

broader concern of overall conduct of the children and their parents and what ought to be done to correct the situation in the best interests of the children. . . . [T]he court must be concerned with the effect which the actions of a parent may create on the impressionable minds of young children.''

In the instant case the trial court correctly focused on the mother's refusal to acknowledge the incest problem in determining what action it should take in the best interests of the child. The court did not abuse its discretion in terminating the appellant's parental rights in this child, and was correct in overruling her motion for new trial.

The appellant's assignments of error are without merit. The action of the separate juvenile court was correct in all respects and is affirmed.

AFFIRMED.

CLINTON, J., participating on briefs.