IN RE INTEREST OF S.S.L., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. R.L. AND S.L., APPELLANTS.

367 N.W.2d 710

Filed May 10, 1985.   No. 84-668.

Laurice M. Margheim, for appellants.

M. Roger Schneekloth, Box Butte Deputy County Attorney, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

The county court, sitting as a juvenile court, placed temporary care and custody of S.S.L., a female child born on May 30, 1979, in and with the Nebraska Department of Social Services. The minor's parents appealed to the district court, which affirmed the placement. On appeal to this court the parents assign a number of errors which may be summarized as claiming that (1) the county court failed to acquire jurisdiction and (2) there exists insufficient evidence that the minor's status is such as to warrant the placement ordered. We find the assignments to be without merit and accordingly affirm.

This case began with the father's effort to remove the child from participation in the Head Start program because the child was becoming unmanageable. He suggested that if the child's behavior did not change, he would have to either tie or lock up the child. Having observed bruises on the child's face, a Head Start employee called the matter to the attention of the Department of Social Services. The mother admitted to the social worker that she was frustrated and nervous, could not control the child, had on more than one occasion struck the child hard enough to leave bruises, and feared that she might injure the child.

On that same day an ex parte hearing was had before the county judge, at which the foregoing information was

presented. The judge then ordered the issuance of a "pickup order," directing the sheriff to "deliver" the child to the custody of the "Department of Public Welfare."

The parents are correct in asserting that the statutes of this state do not provide for such a procedure. However, Neb. Rev. Stat. § 43-248 (Reissue 1984) empowers any peace officer to take temporary custody of a juvenile who, among other things, "is seriously endangered in his or her surroundings and immediate removal appears to be necessary for the juvenile's protection . . . ." Given the statements of the father, the admissions of the mother, and the presence of unexplained bruises, the sheriff would have had the authority under the foregoing statutory language to take and deliver the child to the Department of Social Services without intervention by the county judge. The fact that the county judge issued an order directing the sheriff to do what the sheriff could otherwise have done prejudiced the parents not at all.

It was not until October 21, 1983, that a sketchy petition was filed in the county court, alleging that the child lacked proper parental care by reason of the fault or habits of the parents, and praying that the child be cared for according to law and the duty of the state. Although the sheriff received the summons on the very day the petition was filed, he, for reasons which the record does not explain, did not serve the parents until October 27.

The parents again correctly assert that Neb. Rev. Stat. § 43-250 (Reissue 1984) requires an officer who has taken temporary custody of a child to "immediately take reasonable measures to notify the juvenile's parent . . . ." Further, the parents observe that under the provisions of Neb. Rev. Stat. § 43-275 (Reissue 1984), a petition was to have been filed within 48 hours after the child was taken into custody.

The time limits imposed by §§ 43-250 and 43-275 obviously were not met. While we do not condone what appears to be the cavalier disregard of the procedural statutes of this state, we cannot conclude, in the absence of direct statutory language to the contrary, that the county court failed to acquire, or somehow lost, jurisdiction of the matter. See *Cole v. M.L. Rawlings Ice Co.*, 139 Neb. 439, 297 N.W. 652 (1941), holding that the failure of the district court to conduct a hearing within

14 days after the filing of the bill of exceptions, as the statute provided, did not deprive the district court of jurisdiction to hear an appeal from the compensation court.

We move on, therefore, to the remaining assignment of error, the sufficiency of the evidence.

On December 20, 1983, an amended petition was filed, adding the allegations that the parents lacked the skills required to provide minimum nurturing and nutritional care and that they had physically abused the child between October 1 and 15, 1983. An adjudication hearing was had on January 12, 1984, at which the parents were represented by counsel, and the child by a guardian ad litem.

The evidence at that hearing established the events presented to the judge on October 14. The mother's complaints to the social worker about the child's behavior were that the child jumped on a bunk bed and knocked the texture off a ceiling.

The foster mother, with whom the Department of Social Services had placed the child, testified that when first placed with her, the child was "real nervous" and would shake, pinch, and scratch herself. She noticed that "[i]f I would pick up something she would duck and like cover her face." She related an incident when the child accidentally broke a ceramic turtle belonging to the foster mother:

> I was out of the room when it happened. She started screaming and crying and shaking — just went out of — I would say out of her head, but - - -
>
> Q- Kinda hysterical?
>
> A- Yes. A hysteric state of mind. I didn't know what was going on, so I came in the room. My husband was frightened to death because he didn't know how to handle the situation. I took her and just held her and talked to her. Finally she kinda got calmed down, but she was just so upset and things.

The foster mother also testified that when the child first came to live with her family, the child used many vulgar or "cuss words" but that at the time of the hearing there was "hardly any of that kind of talk." The foster mother reported that she had observed a change in the child's behavior since living with her family; the child was much calmer. "Like if you go to comb her

hair she don't duck now and frightened of you." The child was also getting along well with the foster mother's child.

The Head Start employee testified she noted bruises on several different occasions prior to the time the child was placed in the department's custody, but noticed only one after that time, which came from a bicycle fall.

It was also established that the child had been temporarily removed from her parents' home on an occasion prior to October 14, 1983, because of burns on the child's arms.

At a later dispositional hearing the court ordered the child committed to the custody of the Department of Social Services. The department was ordered to file a report within 30 days detailing a plan of care and services for the child and another report within 60 days detailing a plan for the parents, aimed at enabling them to recover custody of the child. The court also ordered visitations to continue 2 hours every other week; and set a date for a review of the case.

Neb. Rev. Stat. § 43-284 (Reissue 1984) provides that when a child is adjudged to fall within Neb. Rev. Stat. § 43-247(3) (Reissue 1984), the court may, among other options, commit the child to the "care and custody of the Department of Social Services." § 43-284(5). The question, then, is whether the evidence establishes that the child falls within § 43-247(3)(a), as alleged by the State. That statute provides in pertinent part that the juvenile court shall have jurisdiction over a juvenile "who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; . . . or who is in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such juvenile . . . ."

In arguing that the evidence is insufficient, the parents first complain that the social worker should not have been allowed to testify about the child's prior temporary removal from the parents' care.

*In re Interest of Hollenbeck*, 212 Neb. 253, 322 N.W.2d 635 (1982), disposes of this argument adversely to the parents. Therein, the appellant claimed that the trial court had erred in admitting evidence of a prior pattern of behavior at the adjudication hearing which led to the termination of her parental rights. We stated:

As to considering evidence of past patterns of behavior in making the adjudication, Neb. Rev. Stat. § 43-206.03(2) (Reissue 1978) states: "The adjudication portion of hearings shall be conducted by the judge without a jury, applying the customary rules of evidence in use in trials without a jury." Section 27-404 is a part of the "customary rules of evidence," and thus it was not error for the trial court to receive such evidence at the adjudication hearing. . . . In this case, evidence of patterns of behavior were clearly relevant to the allegations against the appellant with reference to her notice of the father's actions. The assignment is without merit.

*Id.* at 261-62, 322 N.W.2d at 640.

Although the juvenile code has been renumbered in our statutes and modified in part, the provisions cited in *Hollenbeck* remain essentially the same today.

The parents next contend that the provision of Neb. Rev. Stat. § 43-279(2) (Reissue 1984) which states that "the court shall make a finding and adjudication . . . based on proof . . . by a *preponderance of the evidence* whether or not the juvenile is a person described by subdivision (3)(a) of section 43-247" deprives them of due process. (Emphasis supplied.)

We have held that an order terminating parental rights must be supported by clear and convincing evidence. *In re Interest of S.A.S., ante* p. 500, 363 N.W.2d 546 (1985); *In re Interest of M.S.,* 218 Neb. 889, 360 N.W.2d 478 (1984); *Santosky v. Kramer,* 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). It appears, however, that we have not yet determined whether the federal or this state's Constitution, notwithstanding the lesser standard specified by § 43-279(2), requires that an order depriving a parent of the temporary care and custody of his or her child must also be supported by clear and convincing evidence. Neither do we decide the issue in this case, for we conclude from our independent review of the record, *In re Interest of Spradlin,* 210 Neb. 734, 317 N.W.2d 59 (1982), that the evidence clearly and convincingly establishes that the parents, by reason of their fault or habits, failed to provide proper parental care and thus placed the child in a situation injurious to her health.

The question raised by the parents as to visitation for Christmas past is moot and therefore is not discussed.

Discussion of the question as to the admission of the testimony claimed to be hearsay is also unnecessary, for the same evidence was otherwise adduced. As such, any hearsay testimony was cumulative and therefore harmless. *Chalupa v. Hartford Fire Ins. Co.*, 217 Neb. 662, 350 N.W.2d 541 (1984). Moreover, and perhaps more importantly, in a trial to the court the presumption is that the trial court considered only such evidence as is competent and relevant. The reviewing court will not reverse such a case because evidence was erroneously admitted, where there is other material, competent, and relevant evidence sufficient to sustain the judgment. *Barber v. Barber*, 207 Neb. 101, 296 N.W.2d 463 (1980). In addition, and perchance most importantly, where the review is de novo, evidence which should not have been admitted by the trial court will be disregarded by the reviewing court. *In re Interest of Aufenkamp*, 214 Neb. 297, 333 N.W.2d 681 (1983).

These rules also dispose of the parents' claims that a witness was not qualified to express an opinion as to the age of certain bruises.

The evidence is sufficient, disregarding all of the questioned testimony.

AFFIRMED.