IN RE INTEREST OF J.S., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. L.S., APPELLANT.
499 N.W.2d 89

Filed February 16, 1993.   No. A-91-1284.

Beth L. Tallon, of Legal Services of Southeast Nebraska, for appellant.

Gary E. Lacey, Lancaster County Attorney, and Nancy Wynner for appellee.

Abbie J. Widger, guardian ad litem for L.S.

HANNON, IRWIN, and MILLER-LERMAN, Judges.

IRWIN, Judge.

L.S. appeals from the order of the separate juvenile court of Lancaster County which placed physical custody of her minor child with the Department of Social Services (DSS).

She alleges that the juvenile court erred in ordering the release of medical records outside a judicial proceeding, in overruling L.S.' motion to quash, in allowing Dr. Klaus Hartmann to testify without a showing of injury to the child, and in allowing DSS to have physical custody of her child. We affirm.

## STANDARD OF REVIEW

An appeal of a juvenile court proceeding to an appellate court is heard de novo upon the record, and the findings of fact by the trial court will be accorded great weight because the trial court heard and observed the parties and witnesses. The trial court's findings will not be set aside on appeal unless they are against the weight of the evidence or there is a clear abuse of discretion. *In re Interest of D.P.Y. and J.L.Y.*, 239 Neb. 647, 477 N.W.2d 573 (1991); *In re Interest of R.W.*, 236 Neb. 420, 461 N.W.2d 545 (1990).

## BACKGROUND

On October 4, 1991, the State filed a petition in juvenile court alleging that L.S., mother of the minor child J.S., was unable to discharge her parental responsibilities because of

mental illness or mental deficiency. On the same day, the State filed a motion asking the court for an order authorizing Dr. Klaus Hartmann or the keeper of records at Lincoln Psychotherapy Services to provide the State with all medical records pertaining to L.S. The motion alleged that the records contained information critical to the issue of L.S.' ability to care for her child and that such information was not subject to the physician-patient privilege under Neb. Rev. Stat. § 27-504 (Cum. Supp. 1990). On October 10, the court ordered that the records be disclosed. The court also signed another order on October 10, appointing counsel for L.S.

On October 22, L.S., through her attorney, filed a motion to quash the order which allowed disclosure of her medical records. The motion was overruled. The admit-deny hearing was held on October 24, and L.S. denied the allegations. On October 25, the State filed a motion for temporary custody of J.S., supported by an affidavit from Child Protective Services, which stated that caseworker investigations of the child's surroundings required such action.

On December 20, an adjudication hearing was held in which it was determined that J.S. was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988). Dr. Hartmann was allowed to testify over objection on the grounds of physician-patient privilege and attorney-client privilege. Based on his personal knowledge of L.S.' 10-year history of schizophrenia, Dr. Hartmann testified that it was his opinion that L.S. was unable to adequately parent J.S. L.S.' parents also testified and expressed their concerns regarding L.S.' parenting abilities. The court sustained the motion, committing J.S. to the temporary legal custody of DSS.

On December 26, a hearing was held and the court granted a motion for immediate physical custody, stating that although reasonable efforts had been made to prevent the need for removal of the child from her mother's home, it would have been contrary to the welfare of the child to leave her in her mother's care. The dispositional hearing was held on January 15, 1992, and the order of disposition was filed on January 17. L.S. appeals from the adjudication hearing, the temporary custody hearing, and the dispositional hearing.

## DISCUSSION

L.S. asserts as error that the trial court granted a motion by the State for disclosure of certain medical records of L.S. Several bases were relied on by L.S. for this conclusion, and we will address them individually.

*Section 27-504(4)(d).*

On October 4, 1991, the Lancaster County Attorney made a written motion to the court for authorization to obtain medical records of appellant from Lincoln Psychotherapy Services. The State maintained and stated in its motion that these records would provide relevant evidence regarding the issue of L.S.' ability to care for her child and were not subject to privilege because of § 27-504(4)(d).

Section 27-504(4)(d) states: "There is no privilege under this rule in any judicial proceedings under the Nebraska Juvenile Code regarding injuries to children, incompetents, or disabled persons or in any criminal prosecution involving injury to any such person or the willful failure to report any such injuries."

L.S. first contends that the above statute relates to the privilege "in any judicial proceedings." Brief for appellant at 2. This is correct. She then goes on to state that a judicial proceeding is best defined as "an in-court action attended by all parties and their counsel." *Id.* No authority is given by L.S. for this position. While it is true that a judicial proceeding is defined by Black's Law Dictionary 849 (6th ed. 1990) as "[a]ny proceeding wherein judicial action is invoked and taken," to restrict this definition to only those actions which occur inside the walls of a courtroom is a literal reading and one that results in farcical outcomes. This case provides but one such illustration. L.S. concedes that a patient's privilege in the setting of a physician-patient relationship is eradicated if the physician is sitting in the witness stand and being questioned by the State's attorney. However, L.S.' position is that the State has no right to discover outside the courtroom and before the trial what the physician will testify to in court. Her position is that the State must blindly examine the physician, only once the physician has taken the witness stand. The State will then by necessity conduct a fishing expedition while the judge, the parties, other

witnesses, other parties scheduled for cases in that court, and a plethora of others wait for the conclusion of what is basically a discovery session. This flies in the face of legislative and judicial philosophy to eliminate surprise in trials, to conduct hearings that result in judicial economy of court resources, and to prevent possible prejudicial evidence from splashing into the proceedings. We conclude that this motion was made in the context of a judicial proceeding, as contemplated by § 27-504(4)(d).

L.S. also argues that § 27-504(4)(d) is triggered only when actual injury has already occurred to a child. However, in *In re Interest of Spradlin*, 210 Neb. 734, 317 N.W.2d 59 (1982), the court interpreted the term "injuries," as used in § 27-504(4)(d):

> "An action to protect a dependent and neglected child necessarily involves a question of impairment of a child's right to parental protection and guidance with consequent loss or destruction of mental and physical health, and the right to a normal and adequate upbringing. . . . This indicates that former section 25-1207 [the predecessor statute to § 27-504] was intended to be effective when the mental condition of a parent is in issue. In the judgment of this court the neglect of a child is an injury to the child's welfare and rights. It constitutes one of the exceptions referred to in the statute . . . ."

*In re Interest of Spradlin*, 210 Neb. at 736, 317 N.W.2d at 61 (quoting *State v. Norwood*, 194 Neb. 595, 234 N.W.2d 601 (1975)).

Child Protective Services initially became involved with L.S. during proceedings involving the welfare of her first child, J.J.S. L.S. has a 10-year history of schizophrenic behavior. In the past, she frequently left town without explanation. In 1989, such behavior was the basis for the removal of her other child, J.J.S. L.S.' illness is diagnosed as chronic and carries a considerable risk of relapse. According to her physician, a relapse, though often unpredictable, is probable when the patient is not being treated with proper medication.

In September 1991, after the birth of her daughter J.S., Child Protective Services learned that L.S. was not receiving any type of psychiatric care or medication for her mental

illness. At the December 26, 1991, hearing, L.S. testified that she had not seen a psychiatrist or taken any medication for her illness since spring of 1991. In reaction to this information, Child Protective Services employee Eike Marthaler was assigned to investigate the care of J.S. After meeting with L.S., Marthaler became concerned about her ability to meet the developmental needs of her child. According to Marthaler, L.S. demonstrated an unwillingness to cooperate or accept assistance from DSS. During that time, she disconnected her phone, would not answer the door, and failed to return a letter sent from DSS.

The circumstances clearly established that the child's welfare required further inquiry, and the State need not wait until catastrophe occurs to act.

We conclude that § 27-504(4)(d) applied to this motion for disclosure because it involved a judicial proceeding and that there was probable cause to believe that injury may well have resulted if no action had been taken.

*Attorney-Client Privilege.*

L.S. contends that the granting of the motion violated her attorney-client privilege, codified as Neb. Rev. Stat. § 27-503 (Reissue 1989). The record discloses that Dr. Hartmann saw L.S. twice in May 1991 and once in June 1991. Dr. Hartmann also testified that the expert opinion he rendered was based on his 10-year physician-patient relationship with L.S. Their first encounter was in 1981, when Dr. Hartmann first admitted L.S. to the Lincoln Regional Center. Since that time, he has observed her on many other occasions. The most recent appointment was in June 1991, as previously mentioned. The June appointment was arranged by L.S.' counsel, who, at that time, was representing her in a matter involving custody of her older child, not a subject of this action. L.S. argues that because the June appointment was arranged on the advice of counsel, Dr. Hartmann's findings are thus work product of the lawyer and therefore privileged. However, L.S. fails to recognize that this examination was not work product, but, rather, a continued monitoring of an illness that Dr. Hartmann first diagnosed in 1981. Given the evidence that we glean from the record, this is

not a violation of the work product doctrine. As the juvenile court judge reasoned when allowing this testimony, accepting L.S.' argument would mean that a doctor who first diagnosed a patient could be prevented from testifying simply by counsel arranging to have the patient schedule another appointment with the doctor.

In 1981, Dr. Hartmann diagnosed L.S. as having undifferentiated schizophrenia. Since that time, his diagnosis has remained unchanged. His testimony was based on evaluations conducted over a span of 10 years. The fact that L.S.' counsel arranged one of the meetings with Dr. Hartmann should not prohibit the State from submitting his medical opinion to the court.

*Motion to Quash.*

L.S. argues that the motion to quash should have been granted, based upon the fact that she was given no opportunity to consult with counsel and therefore was effectively deprived of the opportunity to object to the motion ordering the disclosure of medical records. L.S. maintains that the hearing on the motion to quash deprived her of a liberty interest without due process of law.

L.S., through counsel, filed a motion to quash the order authorizing disclosure of her medical records on October 22, 1991. The trial court heard arguments on the motion to quash, and counsel submitted briefs on the question. The court overruled the motion on November 22. Counsel for L.S. filed a motion to reconsider the motion to quash on November 25. The motion was overruled, after hearing, on November 26. Thus, L.S. had the opportunity to object, with the aid of counsel, to disclosure of her medical records through her motion to quash and her motion to reconsider the motion to quash. We express our disapproval of the original procedure to obtain this order. An ex parte order entered prior to counsel being appointed or retained and before a party even denies the allegations of a petition should not be a matter of practice.

*Order for Immediate Physical Custody of the Child.*

On December 26, 1991, the trial court granted the State's motion for immediate physical custody of J.S. L.S. argues that

this was error without first making reasonable efforts to keep the child in the home.

Donna Bass, a DSS caseworker, testified that she went to the home of L.S. on December 24, 1991, but that L.S. told her to remain outside. L.S. refused to accept a copy of the court's adjudication order. L.S. also refused Bass' offer to read the order to her. Bass stated that it was the position of DSS that it was contrary to the welfare of J.S. to reside with L.S. because DSS had not been able to put into operation any safeguards for the child.

Tom Dawson, guardian ad litem, testified that he had visited J.S. on December 24. He stated that L.S. had asked him what the consequences would be if she left town. He said he had replied that that would be the worst thing she could do. He stated that it would be in the best interests of the child to be placed outside the custody of L.S.

Dr. Hartmann testified that supportive services must be, but were not, in place to care for L.S. and to protect J.S. The court determined that reasonable efforts had been made to prevent or eliminate the need for removal of J.S. from her mother's home, but that it would be contrary to the welfare of J.S. to leave her in the care of her mother until supportive services were in place.

Reviewing the record de novo, we determine that the findings of fact by the trial court are not contrary to the evidence, nor is there abuse of discretion. Therefore, the judgment of the trial court is affirmed.

AFFIRMED.