In re Interest of Brian B. et al., children
under 18 years of age.
State of Nebraska, appellee, v. Justine R.,
appellee, and Kevin R., appellant.
689 N.W.2d 184

Filed December 3, 2004.    No. S-03-1316.

Jeffrey A. Wagner, of Schirber & Wagner, L.L.P., for appellant.

Lee Polikov, Sarpy County Attorney, and Sandra K. Markley for appellee State.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is an appeal from an adjudication by the separate juvenile court of Sarpy County that Brian B., Stephanie B., and Raymond R. are abused or neglected minors as defined in Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2002) by reason of the conduct of Justine R., their natural mother, and Kevin R., the natural father of Raymond. The natural father of Brian and Stephanie is not a party to these proceedings. Kevin is the sole appellant.

## FACTS

Brian, born November 12, 1999, and Stephanie, born October 4, 1998, had been adjudicated by the separate juvenile court on May 29, 2002, for reasons which are not entirely clear from the record, but apparently related to the sanitary conditions of their home. Thereafter, they continued to reside with Kevin and Justine, who were then married, and the couple's minor son, Raymond, born April 22, 2002. The record reflects that Kevin left the residence in July 2002 and that he did not return until June 2003. In October 2002, all three children were removed from the home and placed in foster care. On July 15, 2003, the State filed the operative "Second Amended Supplemental Juvenile Petition" alleging that all three children were as described in § 43-247(3)(a) because Kevin had sexually assaulted Stephanie, then age 4, and because Raymond, then age 6 months, had suffered an unexplained broken femur while in Justine's care in October 2002.

Prior to the adjudication hearing on these allegations, the State filed a motion to use hearsay statements made by Stephanie to her therapist and a separate motion to allow Stephanie to testify in chambers at the adjudication hearing. A pretrial hearing was held on these issues. At this hearing, the State offered the expert testimony of Mary Ellen Christ-Anderson, a child and family

therapist and a licensed mental health practitioner in the State of Nebraska. Christ-Anderson specializes in the area of play therapy with children who have experienced trauma in the form of abuse or neglect.

Christ-Anderson began seeing Stephanie in January 2003. In Christ-Anderson's opinion, Stephanie is developmentally delayed in her general knowledge, speech, and vocabulary and in her coarse motor and fine motor skills. Christ-Anderson testified that Stephanie was capable of telling what had happened to her but that "there would be a risk of harm" in forcing her to testify in front of Kevin. Christ-Anderson opined that because Stephanie had been diagnosed with posttraumatic stress disorder, testifying in a large room with many people, including Kevin, would be "very frightening." Christ-Anderson further testified that it was possible that seeing Kevin would cause Stephanie to "regurgitate" memories of the sexual abuse and "shut down." Christ-Anderson also expressed concern that Stephanie may think that talking about the abuse in front of people would cause her to get in trouble, that she may engage in negative behaviors after seeing Kevin, and that she may experience emotional flashbacks. In response to counsel's question, "Do you believe that there's a risk that [Stephanie] would shut down completely if she was forced to testify in front of [Kevin]?" Christ-Anderson replied, "Could be."

On cross-examination, Christ-Anderson conceded there was only a possibility that Stephanie would suffer irreparable harm if she testified in the courtroom in front of Kevin. She further stated that if Stephanie were frightened, there was a possibility that she would not be truthful for the court. She admitted that it was equally possible that seeing Kevin would not cause Stephanie to "shut down." She stated, however, that when a child or person with posttraumatic stress disorder is met with a similar experience or a similar trauma, such as seeing the perpetrator, "it normally results in an emotional upheaval and subsequent negative behaviors." She admitted that her suggestion that testifying could result in irreparable harm to Stephanie was merely "[a]n educated guess." However, Christ-Anderson testified that due to Stephanie's developmental and cognitive delays, her ability to understand and process the experience of testifying would be "very unique." Neither Kevin nor Justine offered evidence at the hearing.

The juvenile court determined that the State had demonstrated "legitimate concerns about the child's testimony in court" and that there "has been a showing of a risk of the child being harmed." Based upon these findings, the court permitted Stephanie to testify in chambers at the adjudication hearing, and she did so. Present in chambers during Stephanie's testimony at the adjudication hearing were the judge, the court reporter, counsel for both parties, the guardian ad litem, and Stephanie's foster father, who was designated as her support person. The court reporter's computer was set up in a separate room occupied by Kevin and the judge's bailiff so that Kevin could view the testimony on the computer screen as it was given. If Kevin wanted the testimony stopped for any reason or wanted to confer with counsel, he was to alert the bailiff, who would then knock on the chamber door, immediately ceasing all testimony. On one occasion, Kevin used this procedure to interrupt the testimony and inform the judge that he was having difficulty reading the testimony from the screen due to the speed of its presentation. Adjustments were made in order to allow him to adequately follow Stephanie's testimony.

Stephanie testified at the adjudication hearing that "Daddy Kevin touched my private" and that "Daddy Kevin hurt my private." Using anatomically correct dolls, Stephanie identified her "private" as her vagina, and she stated that "Daddy Kevin" touched her there with his tongue. She further testified that "Daddy Kevin hurt my private with his private." On cross-examination, Stephanie testified that "Daddy Kevin" hurt her in the barn and that she rode on a tractor with him. She testified there were cows and horses and giraffes in the barn. She also stated she remembered going to Disney World. Kevin subsequently testified that Stephanie had never been either on a tractor or to Disney World. He denied ever touching Stephanie in a sexual manner.

After Stephanie testified at the adjudication hearing, Christ-Anderson was permitted to testify over Kevin's hearsay objections regarding statements Stephanie made to her during the therapy sessions which began in January 2003. These statements were to the effect that "Daddy Kevin" had sexually assaulted her. Christ-Anderson testified that the statements were consistently made over the course of five or six separate sessions. She also testified that the very first time Stephanie made an allegation, it was

offered spontaneously after Christ-Anderson had asked her a question about a stuffed animal. The State argued that the statements were admissible hearsay as a statement made during a medical diagnosis, Neb. Rev. Stat. § 27-803(3) (Cum. Supp. 2002); as a statement qualifying under the residual hearsay exception, § 27-803(23); or as a prior consistent statement offered to rebut a recent charge of fabrication, Neb. Rev. Stat. § 27-801(4)(a)(ii) (Reissue 1995). The juvenile court found that the statements fell within § 27-803(23), the residual hearsay exception, but did not qualify as a statement made during a medical diagnosis under § 27-803(3). The court did not make an express ruling on whether the statements were admissible as a prior consistent statement under § 27-801(4)(a)(ii).

On October 29, 2003, the juvenile court entered an order finding the allegations in the State's second amended supplemental juvenile petition to be true by a preponderance of the evidence and adjudging Brian, Stephanie, and Raymond as children within the meaning of § 43-247(3)(a). Kevin perfected this timely appeal, which we moved to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Kevin assigns, restated, that the juvenile court erred in (1) granting the State's motion to allow Stephanie to testify in chambers, (2) admitting statements made by Stephanie to her therapist under the residual hearsay exception, and (3) finding the allegations in the State's petition true by a preponderance of the evidence.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Jac'Quez N.*, 266 Neb. 782, 669 N.W.2d 429 (2003).

## ANALYSIS

Kevin argues that his due process rights were violated when the juvenile court allowed Stephanie to testify outside of his presence at the adjudication hearing. Because this is a juvenile proceeding and not a criminal case, the heightened standards of the Confrontation Clause are not applicable. See *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999). Compare *State v. Vaught, ante* p. 316, 682 N.W.2d 284 (2004) (Confrontation Clause analysis of child's statement to physician under § 27-803(3)). Instead, the proper analysis is whether Kevin's due process rights were violated. See *In re Interest of Kelley D. & Heather D., supra.*

The right of parents to maintain custody of their child is a natural right, subject only to the paramount interest which the public has in the protection of the rights of the child. *Id.* Here, while Kevin has not been shown to have any parental relationship with Stephanie, the State alleged sexual abuse perpetrated upon her by him as the basis for adjudication of all three minor children, including Raymond, who is Kevin's biological child. After finding that the allegations of the second amended supplemental juvenile petition were true, the juvenile court specifically noted that while Raymond was not alleged to have been abused by Kevin, it was "appropriate to assume jurisdiction on all children in a family where one or more are subject to abuse and neglect rather than wait for the possibility of future abuse." Thus, Kevin's due process rights are implicated by virtue of the potential effect of these proceedings upon his parental relationship with Raymond.

The concept of due process embodies the notion of fundamental fairness and defies precise definition. *In re Interest of Kelley D. & Heather D., supra; In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). As we noted in *In re Interest of Kelley D. & Heather D.*, Neb. Rev. Stat. § 43-279.01(1)(d) (Reissue 2004) states in part that where a parent or custodian appears in an adjudication proceeding, the court shall inform the parties of the right to confront and cross-examine witnesses. In deciding due process requirements in a particular case, we must weigh the interest of the parent, the interest of the State, and the risk of erroneous decision given the procedures in use. *In re*

*Interest of Kelley D. & Heather D., supra.* Due process is flexible and calls for such procedural protections as the particular situation demands. *Id.*; *In re Interest of L.V., supra.*

■■■ The requirements of due process in the circumstance where the State seeks to have a child testify in chambers at a juvenile adjudication hearing were articulated in *In re Interest of Danielle D. et al.*, 257 Neb. 198, 595 N.W.2d 544 (1999). The State must first give notice of its intent to the parents of the juvenile or their counsel prior to the adjudication hearing. *Id.* When such notice is given, the juvenile court must conduct a hearing separate from the adjudication hearing to determine whether reasons exist for excluding the parents from the child's testimony at the adjudication hearing. *Id.* "A child should be allowed to testify in chambers at a separate hearing when there are legitimate concerns about the child's testifying in the presence of his or her parents," and it is "only logical that the child not be faced with the risk of being harmed when that is what the court is trying to prevent." *Id.* at 206, 595 N.W.2d at 550. When the requisite showing has been made by the State, the juvenile court may exercise its discretion in determining whether to permit the child to testify in chambers. *Id.*

■ In *In re Interest of Danielle D. et al.*, we determined that because there was no advance notice of the State's intent to have the child testify in chambers and no showing that the presence of the parents during the child's testimony "could be harmful" to the child, the juvenile court abused its discretion in permitting in camera testimony out of the presence of the parents. 257 Neb. at 207, 595 N.W.2d at 551. Here, however, notice was given and a separate hearing was held on the issue of whether Stephanie would be permitted to testify in chambers out of the physical presence of Kevin. Based upon the evidence received at the hearing, the juvenile court determined that there were legitimate concerns about Stephanie's testifying in open court and that the State had shown "a risk of the child being harmed." In assigning error to this determination, Kevin argues that the State failed to establish with a "reasonable degree of certainty" that Stephanie would suffer "significant psychological trauma" if she were required to testify in his presence. Brief for appellant at 15, 16. This argument overstates the evidentiary showing necessary to trigger the

discretion of the juvenile court to permit in camera testimony of a minor child. The State need only show that there are legitimate concerns regarding a risk of harm to the child if he or she is required to testify in the presence of a parent. See *In re Interest of Danielle D. et al., supra.*

In this case, Christ-Anderson testified that Stephanie is developmentally delayed in her general knowledge, speech, and vocabulary and in her coarse motor and fine motor skills. She further testified "there would be a risk of harm" in forcing Stephanie to testify in the presence of Kevin. Christ-Anderson further testified that when a child or person with posttraumatic stress disorder is met with a similar experience or a similar trauma, such as seeing the perpetrator, "it normally results in an emotional upheaval and subsequent negative behaviors." In addition, Christ-Anderson testified that due to Stephanie's developmental and cognitive delays, her ability to understand and process the experience of testifying would be "very unique."

In our de novo review, we conclude that this showing was sufficient to permit the juvenile court to exercise its discretionary authority to allow the minor child to testify in chambers. We further conclude that the procedures utilized by the juvenile court were adequate to safeguard Kevin's due process rights. Although he was not allowed to personally confront Stephanie during her testimony, his counsel did so during both direct examination and extensive cross-examination. Kevin was able to view the substance of Stephanie's testimony in near real time, and he was able to confer with his counsel during the testimony. In *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999), juvenile witnesses at an adjudication hearing were situated in the courtroom so that they would not be directly confronted by their father, who was alleged to have abused them. Noting that the father's counsel was able to fully view the witnesses' facial expressions during their testimony, we concluded that the positioning of the juvenile witnesses "did not violate any right of fundamental fairness or confrontation, nor did it violate § 43-279.01(1)(d)." *In re Interest of Kelley D. & Heather D.*, 256 Neb. at 477, 590 N.W.2d at 401. We reach the same conclusion in this case.

■ We next consider Kevin's argument that the evidence was insufficient to support the State's allegations that the three minor children came within the meaning of § 43-247(3)(a). As noted above, the two older children were already subject to the jurisdiction of the juvenile court based on a previous adjudication that is not the subject of this appeal. In his brief, Kevin does not challenge the adjudication of Raymond under count II of the second amended supplemental juvenile petition, which was based upon the injury to the child's leg. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *In re Petition of Omaha Pub. Power Dist., ante* p. 43, 680 N.W.2d 128 (2004). Accordingly, we focus solely on the question of whether the evidence was sufficient to support adjudication under count I, which alleged that Kevin had sexually assaulted Stephanie.

■ The purpose of the adjudication phase of a juvenile proceeding is to protect the interests of the child. The parents' rights are determined at the dispositional phase, not at the adjudication phase. *In re Interest of Sabrina K.*, 262 Neb. 871, 635 N.W.2d 727 (2001); *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 598 N.W.2d 729 (1999). To obtain jurisdiction over a juvenile, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *Id.* At the adjudication stage, in order for the juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence. § 43-279.01(3); *State v. Canady*, 263 Neb. 552, 641 N.W.2d 43 (2002); *In re Interest of T.M.B. et al.*, 241 Neb. 828, 491 N.W.2d 58 (1992). As noted above, our review of factual issues in an adjudication proceeding is de novo on the record, but where credible evidence is in conflict on a material issue of fact, we may consider and give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *In re Interest of Jac'Quez N.*, 266 Neb. 782, 669 N.W.2d 429 (2003).

The central factual issue is whether Kevin sexually assaulted Stephanie as alleged in count I of the operative amended petition. There is conflicting evidence on this issue. Stephanie's testimony

at the adjudication hearing supports the allegation that the assault occurred. The juvenile court made a specific finding that "the testimony of Stephanie . . . was credible given her age and development despite [Kevin's] counsel's able effort to show Stephanie was suggestible as to the details of the assault and other matters. Stephanie did not change her assertion that she was inappropriately touched by [Kevin]." Other evidence supporting the State's allegation of sexual abuse includes the testimony of witnesses who observed Stephanie's behavior during the period in question. Debra Monestero, a licensed practical nurse and family support worker who saw Stephanie on a regular basis from March 2002 through the date of the adjudication hearing in September 2003, testified that she observed Stephanie engaging in unusual behaviors beginning in late October 2002. The child removed her clothing during Monestero's visits and attempted to rub her genital area against Monestero's leg. On another occasion, Monestero observed Stephanie engage in sexualized play with a doll. Monestero was concerned by this behavior and reported it to her supervisor. A foster parent who began caring for Stephanie in her home in November 2002 testified that she observed Stephanie rubbing her genital area against various objects on numerous occasions.

Christ-Anderson began seeing Stephanie on January 9, 2003, pursuant to a referral from Stephanie's caseworker, who was concerned about possible sexual abuse. Christ-Anderson testified that during her therapy sessions, Stephanie exhibited behaviors typical of children who have been sexually abused, including hypervigilance and sexualized play, and that Stephanie displayed a knowledge of sexuality which was atypical for a child of her age.

Evidence disputing the allegations of sexual assault included Kevin's sworn testimony that he never touched Stephanie in a sexual manner and his testimony concerning alternative sources of Stephanie's sexual knowledge, including videotapes, cable television, and an occasion when Stephanie opened a bedroom door and observed him and Justine engaged in sexual activity. Also, Justine testified that in December 2002, she told Stephanie to report that Kevin had touched her inappropriately, not because the touching had occurred, but because Justine was angry with Kevin. Justine also testified that she never observed Stephanie

880

engaging in any sexualized behavior before she was placed in foster care.

Based on our de novo review of the record, we conclude that the allegations of count I of the operative amended petition were proved by a preponderance of the evidence. We reach this conclusion without considering Christ-Anderson's testimony regarding statements made to her by Stephanie which were received over Kevin's hearsay objection. Because this cumulative testimony is unnecessary to our determination of the sufficiency of the evidence, we need not reach Kevin's assignment of error regarding the admission of such testimony under the residual hearsay exception. See, *In re Estate of Jeffrey B., ante* p. 761, 688 N.W.2d 135 (2004); *In re Interest of S.S.L.*, 219 Neb. 911, 367 N.W.2d 710 (1985). As noted, there is no challenge to the sufficiency of the evidence with respect to count II.

## CONCLUSION

For the foregoing reasons, we conclude that the juvenile court did not err in adjudicating all three minor children to be within the meaning of § 43-247(3)(a) and, therefore, subject to its jurisdiction. The judgment is therefore affirmed.

AFFIRMED.